JAMES A. VAN SCHAICK, Respondent, v. EDGAR C. VAN BUREN, PAUL C. VAN BUREN and T. FRANKLIN SILVEY, Appellants.

70h 575
62ad121

*Agreement not capable of enforcement because of uncertainty.*

The defense interposed to an action brought upon a promissory note for $1,500, made by the defendants to the plaintiff, was to the effect that the giving and taking of the note were a part of an agreement by which the plaintiff was to loan to one of the defendants $3,000, to enable him to purchase and stock a farm, on which the plaintiff was to take a mortgage; that the $1,500 represented by the note was a part of this loan, and that the balance of $1,500 was to be advanced at the maturity of the note when the note was to be taken up, and a mortgage was to be taken for the whole $3,000 for a term of years; that

at the maturity of the note, the said defendant offered to execute the mortgage, but the plaintiff refused to take up the note and advance the further sum of $1,500, or to take the mortgage.

*Held,* that conceding that the agreement on the part of the plaintiff was to advance an additional $1,500, and then take a mortgage for the whole $3,000, and surrender up the note for $1,500, still the agreement was not capable of being enforced, by reason of its uncertainty.

APPEAL by the defendants, Edgar C. Van Buren, Paul C. Van Buren, and T. Franklin Silvey, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Washington county on the 27th day of July, 1892, upon the report of a referee.

The facts and questions presented are set forth in the opinion of the referee, D. M. Westfall, Esq., which is as follows:

" This action is brought upon a promissory note for $1,500 given by defendants to plaintiff, dated April 1, 1884, payable one year from date with interest. The defendant, Edgar C. Van Buren, answers separately, and the other two defendants answer together. Neither answer denied any allegation of the complaint. The answer of Edgar C. Van Buren sets up as a defense, in substance, that the giving and taking of the note were a part of an agreement by which the plaintiff was to loan to the defendant, Edgar C. Van Buren, the sum of three thousand dollars to enable him to purchase and stock a farm, and the plaintiff was to take a mortgage therefor on such farm ' for a term of years thereafter;' that the fifteen hundred dollars represented by said note was a part of said loan, and the balance of $1,500 was to be advanced at the maturity of the note, the note to be taken up and mortgage to be taken for the whole three thousand dollars for a term of years; that at the maturity of the note, the defendant, Edgar C. Van Buren, ' was ready and willing and offered to execute said mortgage,' but the plaintiff refused ' to take up the said note and advance the said further sum of fifteen hundred dollars * * * or to take the said mortgage upon the said lands for a term of years for $3,000, and refused to perform,' &c., by reason whereof the defendant, Edgar C. Van Buren, ' was prevented from properly stocking and working and managing the said farm, and was deprived of the profits thereof.'

" The other answer sets up as a defense, in substance, that prior to or at the time of the execution of the said note, it was agreed

between the parties that the 'plaintiff would take up the said note when it became due and advance fifteen hundred dollars more to the defendant, Edgar C. Van Buren, and release and discharge these defendants from all liability on the said note, and for the whole sum which these aggregated, three thousand dollars, would take a mortgage for a term of years upon the real estate of the defendant, Edgar C. Van Buren;' that said defendant, Edgar C. Van Buren, was ready and willing and offered to execute the said mortgage * * * but that the said plaintiff refused to take up the said note. * * * or to advance fifteen hundred dollars more of money or to take and accept therefor the mortgage of the said defendant, Edgar C. Van Buren, upon the said lands for the whole amount.

" The plaintiff replied to the answer of Edgar C. Van Buren denying the matters of counterclaim therein.

" The defendants by their answers aver that the real estate in question was of the value of six thousand dollars. It was in fact worth only $3,000, or at most $3,500, and of that from $2,200 to $2,500 was in the buildings.

" There was upon the trial much conflict, indefiniteness and discrepancy in the evidence as to the negotiations and conversations between the parties, and much indefiniteness as to precise dates. But I think the evidence fairly leads to the following conclusions and in the following order, viz. :

" In March, 1882, the defendant, Edgar C. Van Buren, bought a farm of three hundred acres in Sunderland, Vermont, from the Hawleys, and took as his only title a quit-claim deed thereof from James Law, and gave to Law a mortgage thereon for $2,700, and to the Hawleys a mortgage thereon for $300. The mortgagor paid the interest on the Law mortgage in the spring of 1883. On the last day of March or the 1st day of April, 1884, defendant, Paul C. Van Buren, applied to the plaintiff for a loan to his son, the defendant, Edgar, of $3,000 on said farm; and represented the farm to be worth from five thousand to six thousand dollars. Plaintiff replied that if he had $3,000, he would like to let it on such security as that, but that he had on hand only fifteen hundred dollars. Later the same day, the parties met at Schuylerville and talked about the matter, and defendant Silvey represented to plaintiff that he was

acquainted with the farm and thought it was worth from four thousand to six thousand dollars, and that if he had the money to loan himself he would have no hesitancy in loaning it on that security. The plaintiff repeated that he had only fifteen hundred dollars, and the defendant Edgar requested plaintiff to loan him the $1,500 on a second mortgage, which he declined to do, and then defendant Edgar requested the plaintiff to raise the three thousand dollars, or to have it raised in some way, and take a first mortgage on the farm, which the plaintiff also declined to do, and suggested or proposed in substance, 'you give me your note, get your father and Silvey to sign it with you, I will let you have the fifteen hundred for a year, and if I get this money (meaning moneys expected from the west) during the year, I will pay it to you and take a first mortgage, just as we are talking now.' Defendant Edgar testifies that this was the proposition, and the other defendants agree with him that there was talk about moneys expected by plaintiff from the west, and they all agree that plaintiff's excuse for not making the further loan was that his moneys did not come from the west. Silvey was unwilling to sign the note without first consulting with his son. Defendants, therefore, told plaintiff they would let it rest that way and see him the next day, and they went elsewhere to look for the money, but failing to get it, they returned the next day (April 1st or 2d) and reported to the plaintiff that Silvey's son had consented to let him sign the note if he would take a mortgage at the end of the year for three thousand dollars. There is great discrepancy among the four parties as to the order, form and substance of what was said and done on that occasion, but the note in suit was then drawn, executed and delivered, and defendant Silvey received therefor the plaintiff's check for fifteen hundred dollars, payable to Silvey's order, and dated April 1st, 1884. It is more than probable that both Silvey and plaintiff believed the farm to be a sufficient security for a three thousand dollar loan, although the plaintiff had never seen it, and that the plaintiff would be in funds to make the loan within the year, and that, therefore, the plaintiff told Silvey that 'he need not be worried, that it would be all right at the end of the year, and I will advance the money and take the first mortgage, provided there is no other mortgage on it.' But in all the conversations and negotiations in the matter not one word was said in regard

to the time or terms of the proposed mortgage. There was no attempt even to prove the allegation of the answers to the effect that the mortgage was to be 'for a term of years.' Nor was any attempt made to prove that the funds which plaintiff was expecting to come in, ever in fact came in. I was impressed upon the trial, and am more strongly impressed now upon reviewing the evidence and circumstances that, although the plaintiff gave the defendants strong assurances that he would make the three thousand dollar loan, yet none of the parties understood at the time that there was any definite, conclusive and binding agreement to do so that could be enforced by either party, or that would operate to invalidate the note if the loan was not made, but rather that the parties, especially the plaintiff and the defendant Silvey, confidently expected that the plaintiff would have the funds, the security would prove satisfactory, and the terms of the mortgage would at some future time be agreed upon.

" Upon the receipt of plaintiff's check defendant Silvey indorsed it and received for it at the Schuylerville bank a twelve hundred dollar draft and three hundred dollars in currency, with which he and defendant Edgar started for Vermont. Plaintiff advised or requested Silvey to see that everything was all right, just as it had been recommended to be, and that there were no liens on the property, and learn whether or not Mr. Law would accept the money on his mortgage if plaintiff's money should come in soon, and so save plaintiff the trouble of driving over there, and to bring the money back with him if he did not find it all right.

" Silvey and Edgar stopped at the Cambridge bank and got the draft cashed and proceeded directly from there to Mr. Law's without first going to the clerk's office to make any inquiry, and paid him upon his mortgage $1,262, and for taxes on the place $26.87, amounting to $1,288.87, reducing the mortgage to fifteen hundred dollars. The Hawley mortgage was taken up and discharged that day or the next, and Edgar gave to Silvey a mortgage for $1,500 to indemnify him against the note. Silvey made a memorandum in his pocket account book, noting the signing of the note and the furnishing of the funds to pay Law and Hawley, but making no mention of any agreement for a further loan. January 16, 1885, plaintiff notified Silvey by letter that he should want the money on

the note in the spring, and Silvey notified Paul Van Buren. They reminded the plaintiff that the understanding was that he should advance $1,500 more. He replied that he could not do it, that his money was west, and he wanted this and must have it to send there to secure moneys he had already invested there.

"In the latter part of March or on the 1st of April, 1885, Silvey paid the plaintiff one year's interest on the note with funds provided by the Van Burens, and afterwards and about April 2d or 3d, the defendants and Silvey's son-in-law met by appointment at Schuylerville and called on plaintiff, and he admitted to them that he had intended to advance $1,500 more and take a mortgage, but that instead of receiving money from where he had expected, he had had to send more there, and they demanded that he fulfill his agreement, but made no special tender of any mortgage. At that time the Law mortgage and Silvey mortgage of $1,500 each remained upon the premises. Subsequently and about the middle of April, 1885, Silvey and his son and his son-in-law called on the plaintiff, and Silvey demanded that he be released from the note, and offered to transfer his mortgage to plaintiff. The plaintiff refused to release Silvey or to accept his mortgage. In June, 1885, plaintiff asked defendant Paul Van Buren whether the defendants were going to raise that money for him; to which he replied that he did not know, but if he could make a strike he would get it; and on two or three occasions before this action was brought the defendant, Paul C. Van Buren, said to the plaintiff that they had made arrangements to get the money and have it the next spring, and on one occasion when plaintiff was threatening to sue the note, the defendant, Paul C. Van Buren, said he would do the best he could to raise the money.

"This action was commenced in August or September, 1888, and in December, 1888, Silvey executed a satisfaction of his mortgage, and defendant Edgar Van Buren sold the place and two tons of hay for $2,200, realizing about $300 over the Law mortgage and interest.

"Upon first reading the pleadings a doubt arose in my mind as to the sufficiency of the answers to constitute a defense. However that may be, the proofs have not satisfied me that any valid, enforcible contract to make the further loan and take a mortgage was entered into, nor that the loan made and the one to be made were

inseparable or dependent, nor that plaintiff has failed in the performance of any valid agreement made by him; and I am at a loss to know what kind of a mortgage the defendant Edgar should have tendered to entitle him to specific performance or to damages for non-performance. So far as the agreement between the parties rested in parol, it was void for incurable uncertainty. (Parsons on Contracts [6th ed.], 561, 565; *Abeel* v. *Radcliff*, 13 Johns. 297; *Baurman* v. *Binzen*, 16 N. Y. Supp. 342.) Nor was this part so much a part of the note as to vitiate it, or to constitute a complete defense to it except by way of counterclaim. (*Batterman* v. *Pierce*, 3 Hill, 171; *Abeel* v. *Radcliff*, 13 J. R. 297; *Swift* v. *Opdyke*, 43 Barb. 274; *Tipton* v. *Feitner*, 20 N. Y. 423; *Isaacs* v. *The N. Y. Plaster Works*, 67 id. 124.)"

*R. A. Parmenter*, for the appellants.

*L. Fraser*, for the respondent.

HERRICK, J.:

I am not entirely satisfied with the findings of the referee upon the facts in the case. It seems to me that the preponderance of evidence shows that the agreement upon the part of the plaintiff was to advance an additional $1,500 in the spring of the year following the giving of the note in question, and to then take a mortgage for the whole $3,000, and surrender up the note of $1,500.

But conceding the true state of facts to be as I have suggested, still the agreement is one that does not seem to be capable of being enforced by reason of its uncertainty.

The authorities on that point cited by the referee in his opinion, and also by the court, in the case of *Baurman* v. *Binzen* (16 N. Y. Supp. 342), seem to sustain the contention of the referee upon that point (see, also, *Milliman* v. *Huntington*, 68 Hun, 258), and I, therefore, think that judgment should be affirmed. I see no occasion for writing an opinion.

Let judgment be affirmed, with costs.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment affirmed, with costs.