EDWARD H. DURKEE

*v.*

THE PEOPLE *ex rel.* F. M. Askren.

*Filed at Ottawa April 1, 1895.*

1. CORPORATIONS—*a by-law authorizing holders of railroad bonds to vote at stockholders' meetings is void.* A by-law of a railroad company empowering bondholders to vote at stockholders' meetings, and a provision of such bonds giving such right to vote, are void under the constitutional and statutory provisions requiring the directors to be stockholders, and elected at the annual meeting of the stockholders by a majority, in value, of the stock, upon a cumulative system of voting, and not otherwise.

2. SAME—*directors of railroad must be stockholders, and elected by stockholders.* It is a part of the public policy of this State that the corporate business and affairs of railroad companies shall be managed and controlled by directors who are not only stockholders themselves, but are elected by the votes of those who are also stockholders.

3. SAME—*rights of purchasers of stock containing provision that bondholders may vote.* Purchasers of corporate stock providing that bondholders may vote at stockholders' meetings do not hold subject to such provision, where the constitution and statute forbid any but stockholders from voting, as the holders of bonds are chargeable with notice of such restrictions and of the invalidity of such provision.

4. CONTRACT—*that bondholders may vote at stockholders' meetings, void.* A contract by which holders of railroad bonds are given the right to vote in stockholders' meetings, to which the corporation is a party, is void, as being contrary to the constitution and statutes, and against public policy.

5. SAME—*when illegal cannot be made valid by ratification.* A contract in conflict with constitutional provisions and the statute under which a corporation is organized, cannot be ratified or made valid by subsequent acts.

6. ESTOPPEL—*cannot be invoked against showing illegality of contract.* There is no estoppel against showing that a contract is invalid, as in violation of a statute or against public policy.

*Durkee v. People ex rel. Askren,* 53 Ill. App. 396, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

In this *quo warranto* proceeding the circuit court of Peoria county overruled a demurrer to the information, and rendered final judgment of ouster and for costs against Edward H. Durkee, the defendant. An appeal to the Appellate Court for the Second District resulted in a judgment of affirmance. This further appeal was then taken.

The opinion filed in the Appellate Court was as follows:

"CARTWRIGHT, J.: An information in the nature of a *quo warranto* was filed, in pursuance of leave granted for that purpose, upon the relation of F. M. Askren, against Edward H. Durkee, the appellant, to contest the right of appellant to hold the office of director of the Toledo, Peoria and Western Railway Company. A demurrer was interposed to the information, and the demurrer being overruled, appellant elected to abide by it, and judgment of ouster and for costs was entered against him.

"The facts appearing in the information which it is necessary for us to state, are as follows: The Toledo, Peoria and Western Railway Company was organized March 28, 1887, under the general law of this State for the incorporation of railway companies, with a capital stock of $4,500,000, for the purpose of constructing a railroad from the eastern boundary line of the State, at a fixed point, westerly through certain counties to the western boundary line of the State at the city of Warsaw, and also, by a branch, from LaHarpe to Burlington, in the State of Iowa. At the time of such organization, Charles Moran and Thomas Denny, of the city of New York, owned a railroad which answered the description of such proposed railroad, and formerly known as the Toledo,

Peoria and Western railroad, which they proposed to sell to the Toledo, Peoria and Western Railway Company. Their proposition was as follows: 'The undersigned hereby subscribe for 44,991 shares of the capital stock of the Toledo, Peoria and Western Railway Company, amounting to the sum of $4,499,100, (the shares being $100 each): *Provided, always,* and this subscription is made only upon one condition: that the manner and terms of payment hereinafter specified are by the board of directors and the incorporators, and the remaining stockholders of said company, accepted as a part of this contract of subscription.' The terms of payment hereinbefore referred to are as follows:

" 'The subscribers shall convey, by proper indenture of deed or bill of sale to the Toledo, Peoria and Western Railway Company, the railway now held by the subscribers, constructed in the State of Illinois, commencing at the eastern boundary line of the State of Illinois, in the county of Iroquois, at a point where the present Toledo, Peoria and Western Railroad Company connects with the Toledo, Logansport and Burlington Railway Company, now called the Chicago, St. Louis and Pittsburg railroad, in the State of Indiana, and to extend thence westerly through the counties of Iroquois, Ford, Livingston, McLean, Woodford, Tazewell, Peoria, Fulton, McDonough, Hancock and Henderson, to the western boundary line of the State of Illinois at the city of Warsaw, and also at the town of Hamilton, on the Mississippi river, and also by a branch from LaHarpe to Burlington, in the State of Iowa; and in consideration therefor shall be paid the shares of stock hereinbefore subscribed for, and also 4500 of the first mortgage bonds of the Toledo, Peoria and Western Railway Company, of $1000 each, amounting to $4,500,000, having thirty years to run and bearing interest at four per cent per annum, the said railway and property being estimated, accepted and taken over by the Toledo, Peoria and Western Railway Com-

pany at the value of $8,999,100, the said amount to be represented by the said 44,991 shares of stock and said 4500 of first mortgage bonds.'

"Said proposition of Moran and Denny was accepted June 25, 1887, by the incorporators, directors and remaining stockholders of the railway company. The incorporators and first board of directors had before this time, on the day that the articles of incorporation were issued, adopted by-laws, among which were the following:

" 'No. 2. At all meetings of the stockholders the owners of bonds of the company which, by the terms of their issue, confer voting power, shall be entitled to vote on their bonds,—that is to say, one vote, either in person or by proxy, on every one hundred dollars of bonds owned for thirty days next preceding such meeting.'

" 'No. 5. At each annual meeting of the stockholders there shall be elected, by ballot, three directors to serve for three years, to fill the place of office of those whose terms shall then expire, and such further number of directors as shall be necessary to fill any vacancy.'

" 'No. 16. The stock of the company shall be transferable on the books of the company by the stockholders or their legal representatives, on surrender of the certificates or upon satisfactory proof of their loss, and in case of loss only upon the delivery of a bond of indemnity satisfactory to the executive committee or board of directors.'

"Upon the acceptance of the proposition of Moran and Denny, the incorporators, directors and stockholders provided for the issue of 5000 bonds, of $1000 each, maturing and bearing interest as stated in the proposition, and for making a mortgage or trust deed securing the same, and providing that the holder of each bond should have the right to vote thereon at all meetings of the stockholders, one vote for each one hundred dollars of said bonds. Afterward the railroad company issued the capital stock, in the sum of $4,500,000, and executed 5000 bonds, of $1000 each, as provided, and delivered to

Moran and Denny $4,499,100 of the capital stock and $4,500,000 in bonds, retaining 500 bonds for future use, and secured all said bonds by mortgage on the railway property, in which mortgage it was provided that the holders of bonds might vote at any and every meeting of the stockholders, one vote for every hundred dollars of bonds held by the person proposing to vote, for a period of thirty days prior to the holding of any meeting. The bonds issued contained a provision that the holders might vote as above stated, and the stock certificates contained a provision as follows : 'This certificate, and the stock represented hereby, is issued, received and held subject to 5000 bonds, of $1000 each, secured by a mortgage of all the property now owned or hereafter to be acquired by this company, and to said mortgage and to the right given in each of said bonds to the holder thereof to vote thereon at all the meetings of the stockholders of the company, one vote for each one hundred dollars of said bonds.' There was also a notation upon the certificate as follows : 'This stock is subject to bondholder's right to vote at all meetings of stockholders. Countersigned and registered.—The Corn Exchange Bank, Registrar of Transfers.'

"The relator became the owner of stock of the corporation by purchase, in the usual course of business, more than thirty days prior to an election held September 11, 1893, and at that election he and appellant were candidates for the office of director. Both were eligible, and votes were cast for each by holders of stock and holders of bonds. If the holders of bonds were entitled to vote, the appellant was elected; but if the agreement that they might vote was invalid, the relator was elected, as he received a majority of the stock vote. The by-laws adopted, as before stated, have ever since remained in force as by-laws of the corporation. The question to be settled is whether the bondholders had a right to vote, in pursuance of the by-laws and said agreement.

"The railway company had power to make by-laws not inconsistent with its charter or the purpose of its creation, nor repugnant to the common law, and was expressly authorized by its charter to establish by-laws for the management of its affairs according to law. It had no power, however, to change or abrogate any provision of the law of its existence by means of a by-law, and if the by-law empowering bondholders to vote at stockholders' meetings is in conflict with the law under which the corporation is organized, it is necessarily void.

"In the statute under which this company was organized the following provisions are found :

" 'Sec. 8. All the corporate powers of every such corporation shall be vested in and be exercised by a board of directors, who shall be stockholders of the corporation, and shall be elected at the annual meetings of the stockholders at the public office of the corporation within this State.'

" 'Sec. 11. In case it shall happen, at any time, that an election of directors shall not be made on the day designated by the by-laws of such corporation for that purpose, the corporation, for such cause, shall not be dissolved, if, within ninety days thereafter, the stockholders shall meet and hold an election for directors in such manner as shall be provided by the by-laws of such corporation : *Provided*, that it shall require a majority, in value, of the stock of such corporation to elect any member of such board of directors, and a majority of such board of directors shall be citizens and residents of this State.'

" 'Sec. 25. In all elections for directors and managers of such railway corporations, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors, multiplied by the

number of his shares of stock, shall equal, or to distribute them, on the same principle, among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner.'

"Said section 25 was enacted in pursuance of section 3, article 11, of the constitution, which contains the same provision and prohibition concerning the election of directors by stockholders as section 25 of the statute.

"By these provisions the power to elect directors of the corporation was conferred upon the stockholders, and the exercise of the power was regulated. It may be conceded that the primary object of adopting the constitutional provision, and the like provision in the statute, was to protect minorities in bodies of stockholders ; but that fact would not change or affect its force, for such object would be defeated by subjecting the right of stockholders to interference by the votes of bondholders unregulated by law. The by-laws in question would give the bondholders control of the corporation instead of the stockholders, for there was but $4,500,000 of stock and $5,000,000 of bonds. The amount of bonds delivered to Moran and Denny equaled the whole capital stock, and the exercise of the privilege of voting on the bonds so delivered to them would double the voting power authorized by law. No by-law could extend or restrict that power as fixed and regulated by the constitution and the charter. The by-law in question being in conflict with the constitution and statute, and against the policy of the State, and proposing an alteration of the charter and continued violation of the law, was void. *State of Nevada ex rel.* v. *Curtis*, 9 Nev. 325; *People ex rel.* v. *Fire Department*, 31 Mich. 458.

"The provision made by the corporation, and contained in the bonds and mortgage, that the holders of bonds might vote at any and every meeting of stockholders, is subject to the same objections as the by-laws. Being in violation of express statutory and constitutional

provisions, the agreement was inoperative and void. *Penn* v. *Bornman et al.* 102 Ill. 523 ; 2 Parsons on Contracts, (5th ed.) 673.

"Nor has such agreement become binding by subsequent ratification, acquiescence or estoppel. Whether bondholders have ever exercised the supposed right to participate in the management of the affairs of the corporation does not appear ; but assuming that such is the fact, and that they have been permitted to do so without objection, the agreement would not thereby become operative. A contract which the corporation could not make, it could not ratify or make valid by any subsequent act. If there was no power to make it, there would be equally a lack of power to confirm it. *Board of Commissioners, etc. et al.* v. *L. M. & B. R. R. Co. et al.* 50 Ind. 85.

"In the transaction Moran and Denny subscribed for 44,991 shares of stock, which constituted the entire capital stock except nine shares, and the holders of those nine shares assented to the arrangement. All the stock, therefore, came either through Moran and Denny, or through the holders of the remaining nine shares, all of whom participated in the transaction. The condition that bondholders might vote was printed in the certificates, so that all holders had notice of the provision. But neither notice of nor assent to an illegal transaction, nor acquiescence, merely, on the part of a stockholder in acts in execution of such transaction, will prevent him from withholding further assent and preventing further execution of it, unless an estoppel can be invoked under some recognized rule of law. The mere fact of participation on the part of the corporation or stockholders in an agreement in violation of the charter could not produce that result, which would be, in effect, abrogating the charter. *Penn* v. *Bornman*, 102 Ill. 523.

"There is no question of fraud or bad faith in this case. No one was deceived or misled as to any fact. It is to be observed that the right of bondholders to vote at

stockholders' meetings was not made a condition in the proposition of Moran and Denny to the corporation. It was not a condition imposed by them, but appears to have been rather a matter of grace or favor to them. But if it were to be regarded as a condition of the contract of sale, its illegality arose from the fact that it was a violation of the statutes of the State, and a contract void as against a statute cannot become operative and valid through an estoppel. There is no estoppel against showing that a contract is invalid, as in violation of a statute or against public policy. *Brightman* v. *Hicks*, 108 Mass. 246; *Langan* v. *Sankey*, 55 Iowa, 52; *Tibble* v. *Anderson*, 63 Ga. 41.

"Corporations possess such powers, and such only, as are conferred upon them by the law of their creation. This corporation was organized under a general and public law of the State, which defined the lawful limits of its capacity. The parties who dealt with it are chargeable with notice of its powers and the limitations of its capacity, and cannot plead ignorance of the public laws and the constitution. No one could be deceived into the supposition that the corporation could lawfully make such a contract as the one in question, for the want of power to make it would be apparent from the public law. In such a case every person is bound, in dealing with a corporation, to take notice of the extent of its powers. *Pearce* v. *M. & I. R. R. Co.* and *P. & I. R. R. Co.* 21 How. 441; *McGregor* v. *Official Manager of the Deal and Dover Railway Co.* 16 Eng. L. & Eq. 180; *New Orleans, etc. Steamship Co.* v. *Ocean Dry Dock Co.* 28 La. Ann. 173; *Franklin County* v. *Lewiston Institution for Savings*, 68 Me. 43; *Davis et al.* v. *Old Colony Railroad Co.* 131 Mass. 258; *Hackensack Water Co. et al.* v. *De Kay et al.* 36 N. J. Eq. 548; *Monument Nat. Bank* v. *Globe Works*, 101 Mass. 57.

"The cases cited by counsel for appellant in support of the proposition that a corporation is estopped from asserting that a contract is *ultra vires* where it has re-

ceived a benefit under the contract, are cases where the making of such contract was within the scope of the corporate franchise, and the contracts were sought to be avoided because there was a failure to comply with some regulation, or the power was improperly exercised. In *Davis* v. *Old Colony Railroad Co. supra*, it is said : 'There is a clear distinction, as was pointed out by Mr. Justice CAMPBELL in *Zabriskie* v. *Cleveland, Columbus and Cincinnati Railroad Co.*, by Mr. Justice HOAR in *Monument Bank* v. *Globe Works*, and by Lord Chancellor CAIRNS and Lord HATHERLEY in *Ashbury Railway Carriage and Iron Co.* v. *Riche*, between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, of which all persons dealing with it are bound to take notice, and the abuse of a general power, or the failure to comply with prescribed formalities or regulations in a peculiar instance, when such abuse or failure is not known to the other contracting parties.'

"No doubt a person dealing with a corporation, who finds the making of a contract to be within the scope of the corporate powers under the charter, has a right to assume that its officers, in the management of its affairs, have complied with all the conditions necessary to the exercise of the power. If the contract with the corporation can be valid under any circumstances, an innocent person has a right to presume the existence of such circumstances. In such cases the corporation and its stockholders may be estopped from avoiding the contract or denying the existence of the requisite conditions. This is the extent to which the cases cited go, and none of them hold that there can be an estoppel where the contract could not, under any conditions, be made by the corporation. To so hold would be equivalent to saying that a corporation could make any contract in excess of its powers and in violation of the laws and policy of the State, for no other reason than because it had made such

contract. A usurpation of power where the other contracting party had full notice of the illegality of the act, would operate, under such a rule, to confer power. We do not think that such a rule could prevail.

"It is suggested that this contract might be operative to confer upon bondholders an equitable right to vote the shares of stock, but it is sufficient to say, respecting that claim, that such was not the contract. The contract was that they might vote as bondholders, and there was no intention of depriving stockholders of the right to vote.

"The judgment will be affirmed."

JACK & TICHENOR, for appellant:

A party dealing with a corporation will not be permitted, when he has received the benefit of the contract, to assert *ultra vires* as a defense. *Railroad Co.* v. *Thompson*, 103 Ill. 187 ; *Bradley* v. *Ballard*, 55 id. 413; *Building Society* v. *Crowell*, 65 id. 453 ; *East St. Louis* v. *Gas Light Co.* 98 id. 415 ; *Darst* v. *Gale*, 83 id. 440; Spelling on Private Corp. sec. 775.

This is not so much a question of *ultra vires* as it is a matter of contract between individuals. For instance, the issuance of watered stock is said to be *ultra vires* and void, and preferred stock cannot be issued without statutory authority; but if the stockholders agree among themselves to the illegal issue they cannot thereafter complain. *Scoville* v. *Thayer*, 105 U. S. 143 ; *Lorillard* v. *Clyde*, 86 N. Y. 384 ; *In re Gold Co.* L. R. 2 Ch. Div. 701 ; *Hazelhurst* v. *Railroad Co.* 43 Ga. 13; *Kent* v. *Quicksilver Mining Co.* 78 N. Y. 159 ; *Taylor* v. *Railway Co.* 2 L. R. Exch. 390; *Bissell* v. *Railroad Co.* 22 N. Y. 269; *Whitney Arms Co.* v. *Barlow*, 73 id. 63; *Phosphate Co.* v. *Green*, L. R. 7 Com. Pl. 43; *Evans* v. *Smallcombe*, L. R. 3 H. L. 249.

A stockholder may be estopped from objecting to an amendment by his expressed or implied acquiescence therein. Any acts indicating an acceptance by him of the amendment, bind him and bar his suit. Cook on

Stockholders, sec. 503, and citations; *Branch* v. *Jesup*, 106 U. S. 468.

Relator should first purge the stock of the corporation from the cloud cast upon it by the contractual relations existing between the corporation, its bondholders and stockholders, before he can insist that the vote cast by the bondholders was illegal. Cook on Stockholders, sec. 297.

R. J. COONEY, States Attorney, and STEVENS & HORTON, for appellee:

It is provided, both in the constitution and statutes of the State, that directors in a railroad corporation shall be elected only by vote of the shareholders. Const. of 1870, art. 11, sec. 3; Rev. Stat. chap. 114, secs. 8-11, 25.

Neither the corporation, its directors or shareholders can change or modify the fundamental law of the corporation. If the charter restricts the right to vote for directors to stockholders, the restriction cannot be removed or modified by the resolution, by-law or contract of the company. *State* v. *Curtis*, 9 Nev. 325; *Brewster* v. *Hartley*, 37 Cal. 15; *Barton* v. *Railroad Co.* 17 Barb. 397; *People ex rel.* v. *Fire Department*, 31 Mich. 458; *Wright* v. *Cal. Cent. C. W. Co.* 67 Cal. 532; Morawetz on Private Corp. sec. 683; *Hood* v. *Railroad Co.* 22 Conn. 510.

A third party cannot insist on a contract beyond the power of the corporation, nor can the shareholder waive the provisions of a prohibitory statute. In other words, they cannot change the charter. *Penn* v. *Bornman*, 102 Ill. 523; *Barton* v. *Railroad Co.* 17 Barb. 397; Beach on Private Corp. sec. 855; *Davis* v. *Railroad Co.* 131 Mass. 258; *Health Ass. Co.* v. *Rosenthal*, 55 Ill. 90; *Downing* v. *Railroad Co.* 40 N. H. 230.

The bondholders were bound to know that this provision was contrary to the charter and laws of the company. *Davis* v. *Railroad Co.* 131 Mass. 258; *Savings Bank* v. *Averill*, 96 N. Y. 467; *Benevolent Society* v. *Rockhold*, 26 Ill.

App. 144; *Alexander* v. *Caldwell*, 83 N. Y. 480 ; *Pearce* v. *Railroad Co.* 21 How. 441.

Relator is not estopped from preventing the continuance of the illegal contract. Spelling on Private Corp. sec. 637; *Penn* v. *Bornman*, 102 Ill. 523; Greenhood on Public Policy, 502; Beach on Private Corp. sec. 855.

There is no estoppel from showing a contract is invalid, as against a statute or public policy. *Brightman* v. *Hicks*, 108 Mass. 246 ; *Logan* v. *Sankey*, 55 Iowa, 52; *Tribbell* v. *Anderson*, 63 Ga. 41 ; *Commissioners* v. *Railroad Co.* 50 Ind. 85.

Mr. JUSTICE BAKER delivered the opinion of the court :

We think that the opinion of the Appellate Court aptly and accurately states both the facts and the law of the case. In the brief and argument for appellant filed in this court, it is claimed that the reasons given by that court for the affirmance of the judgment are not satisfactory. The *gist* of this contention, as we understand counsel, is, that the judgments below are in direct antagonism to the plain provisions of a contract entered into by and between *individuals* in all respects fully competent to act in relation to the matter involved, and that to declare the contract void in this collateral proceeding is to impair the rights of contracting parties fully capable of contracting as between each other, and plainly in derogation of legal principles.

The several contracts here involved were not contracts between natural and individual persons, but all contracts to which the corporation was a party. The by-laws were established by the corporation itself, acting as a corporate body. The proposition of Moran and Denny to subscribe stock, and to transfer the already constructed railroad owned by them to the Toledo, Peoria and Western Railway Company, was made to said company after its organization under the laws of the State, and was accepted by the board of directors and

the incorporators and stockholders of that company, acting for and as that company; and the trust deed, bonds and certificates of stock, which are the instruments under and by virtue of which the bondholders claim the right to vote at the meetings of the stockholders, are all instruments that were executed, issued and delivered by the railway company. The supposed contract right to vote is based upon and grows out of instruments and contracts made by the company as a corporate entity, and not otherwise.

It is claimed by counsel that in *Lorillard* v. *Clyde,* 86 N. Y. 384, a like agreement with that here in question was held by the court to be valid. That case was wholly unlike this in many respects. The corporation was not a party to the contract there in suit. The agreement of June 14, 1874, was made prior to the organization of the corporation, and was made between the plaintiff, Lorillard, and the firm of Wm. P. Clyde & Co., and provided for a consolidation of business and property, and for the formation of a corporation and a corporate management of the consolidated business. It also contained numerous other provisions, and it was for a breach of some of these other provisions of that contract that the suit was brought. Another very material difference between the cases is, that there nothing was provided for in the agreement that was "inconsistent with the provisions of the statute or immoral in itself," while here, that which was provided for in the contract was explicitly prohibited both by the statute and the constitution of the State. An agreement to do an act forbidden by statute is not binding. (*Penn* v. *Bornman,* 102 Ill. 523; *Cincinnati Mutual Health Ass.* v. *Rosenthal,* 55 id. 85; *Rockhold* v. *Canton Masonic Benevolent Society,* 129 id. 440, and 26 Ill. App. 152.) And it would be absurd to say that either persons or corporations can abrogate such a statute, upon the theory of an estoppel, by simply contracting to do the prohibited act.

It is urged that Messrs. Moran and Denny received and held the stock of the company in terms *subject* to the right of the bondholders to vote, and that the relator herein, with full knowledge of the provision inserted in both bonds and certificates of stock, was enabled to purchase his stock at the depreciated value which it had by reason of the fact that it was taken and held *subject* to the right of the bondholders to vote; that the stock is subject to certain fixed conditions, which constitute an infirmity attached to the stock itself, and that when he purchased the stock he assumed and agreed to take and hold it subject to the right of the bondholders to vote at the meetings of the stockholders. And in the same connection it is also urged that Messrs. Moran and Denny sold these bonds upon the market; that the stipulation in question undoubtedly gave the bonds a market value which they otherwise would not have had, and that they, Moran and Denny, received whatever enhanced value they were enabled to obtain by reason of the provision for the protection of the bondholders and the conservation of the capital invested by them in the enterprise, and that therefore Moran and Denny, as holders of the stock and the assignees of such stock, with knowledge of the provision inserted in the certificates of stock, should hold the stock subject to such provision. This seems to us to be a partial and incorrect view of the matter. Both the constitution of the State and the statute under which the railway company was organized make provision for the election of the directors or managers of all such companies by the stockholders, and further provide that "such directors or managers shall not be elected in any other manner." It is therefore to be presumed that the relator, when he purchased his stock, knew that the stipulation and provision in question were directly contrary to the constitution and statute, and consequently void, and for that reason was willing to pay, and did pay, a larger consideration for

the stock than he otherwise would have paid. And the bondholders are also chargeable with notice of the requirements and restrictions of the public statute under which the corporation was formed, and were therefore bound to know, and did know, when they received or purchased their bonds, that the stipulation giving them the right to vote at any and every meeting of the stockholders was in palpable and absolute conflict with the prohibitions of that statute, and necessarily null and void.

The sections of the statute that are quoted at length in the opinion of the Appellate Court, indicate quite clearly that it is a part of the public policy of the State that the corporate business and affairs of railroad companies shall be managed and controlled by directors who are not only stockholders themselves, but who are likewise elected by the votes of those who are also stockholders. It is for the interest of the State and of the public that railroad companies be successfully managed, so that they will well and promptly perform the public duties that devolve upon them, and afford all necessary facilities for the safe transportation of persons and property. The interest of the shareholders depends upon the success of the corporation, and the public is interested in having railroad corporations managed and controlled by those who will profit by keeping up the property and by careful management, rather than by bondholders, whose interest, frequently, with a view to foreclosure and future ownership, lies in a depreciation in the condition and value of the property, and in a shrinkage in the revenues of the company. It would seem that a contract which annuls these statutory provisions is 'against public policy, and a fraud upon the statute under which the corporation is organized and from which it derives all its powers.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*