## Best Brewing Co. v. Kunigunda Klassen.

1. CONSTRUCTION OF CONTRACTS—*Suretyship—Explanation of Ambiguities.*—There is no rule exclusively applying to contracts of suretyship requiring them to be, in all cases, interpreted with stringency and critical acumen against a creditor, all ambiguities to be resolved to the advantage of the surety, and every liability excluded that can by strained construction be deemed outside of the agreement. If the terms are ambiguous, the ambiguity may be explained by the circumstances surrounding the parties, and if the surety has left anything

Best Brewing Co. v. Klassen.

ambiguous in his expressions, the ambiguity is to be taken most strongly against him.

2. APPEAL BONDS—*Forcible Entry and Detainer—Identification.*—An appeal bond in an action of forcible entry and detainer given in order to perfect an appeal of the case to the County Court, although containing no description of the premises for the restitution of which judgment was rendered, sufficiently identifies the premises in question with those referred to, if the bond is filed in the same case, and recites that it was given to perfect an appeal of the identical case, to the County Court.

3. PRACTICE—*Appeal from Judgment of Justices.*—In cases of appeal from judgments of justices of the peace, trials in the Circuit and County Courts are to be *de novo*, upon such evidence as the parties may produce, and the appellee has the right under Section 181, Chapter 79, R. S., to elect whether the appeal shall be dismissed, or have judgment for the amount of the recovery appealed from.

4. WORDS AND PHRASES—*The Word "Affirm" Defined.*—According to the Century Dictionary the word "affirm" is defined as meaning "to make firm, establish, confirm or ratify." The condition of the bond requiring that the judgment appealed from shall be "affirmed" is satisfied by a judgment which is in effect an affirmance.

5. CONTRACTS—*Of Voluntary Obligation.*—The rule of construction of contracts of voluntary obligation, whether as to sureties or principals, is to give that meaning and interpretation to the words used in the light of the whole instrument, together with any side light in case of ambiguity, as will carry out the evident intent of the parties thereto.

6. STATUTORY BONDS—*To Be Liberally Construed.*—Statutory bonds taken by court officers will be liberally construed, and the intention must be attributed to the obligors, of entering into an obligation every provision of which would be valid.

7. CORPORATIONS—*As Sureties on Appeal Bonds—Ultra Vires.*—A corporation formed for "the manufacture and sale of beer, ale and porter, and the carrying on of a general brewing business in all its branches," has power under its charter to sign a bond in pursuance of its legitimate business of manufacturing and selling its product.

8. ULTRA VIRES—*Executed Contracts.*—While a contract, *ultra vires* remains executory, courts will interfere to prevent its enforcement, or on the application of a shareholder or other authorized persons, prevent its execution; but when it has been carried into effect, and the corporation has received the benefit of it, it can not plead the excess of its power in discharge of its liability.

9. ESTOPPEL—*Corporations—Ultra Vires.*—Whether a corporation is estopped to raise the question that a contract was *ultra vires* because it has received the benefit of it, depends upon the sense in which the term *"ultra vires"* is used; in the more legitimate use of the term, it applies only to acts which are beyond the purpose of the corporation, which could not be sanctioned by the stockholders.

10. SAME—*Corporations—Ultra Vires.*—A brewing company having signed an appeal bond as surety in order to protect and retain a customer and increase the sale of its manufactured product, which by its charter it is authorized to manufacture and sell, the purpose was within its corporate powers; and though the act was an abuse of a general power, yet having received the benefit, the corporation is estopped from asserting that its act was *ultra vires,* because the power was improperly exercised.

Debt, upon an appeal bond. Trial in the Circuit Court of Cook County, on appeal from a justice of the peace; the Hon. ELBRIDGE HANECY, Judge, presiding. Judgment for plaintiff; appeal by defendant. Heard in this court at the March term, 1899. Affirmed. Mr. Justice HORTON, dissenting. Opinion filed November 7, 1899. Rehearing denied.

**Statement.**—This is an action of debt brought by appellee against appellant and one Ruel G. Rounds, upon an appeal bond given in a forcible entry and detainer case. Appellee recovered judgment before a police magistrate for possession of certain premises against Rounds, a saloon keeper, and a customer of the appellant. Rounds appealed to the County Court and judgment in favor of appellee and for restitution of the premises, was rendered there also.

The appeal bond taken by the police magistrate was for $2,000, and the condition is that if Rounds shall prosecute his appeal to the County Court with effect, and pay all rent due or to become due before the final termination of the suit, with such damages and loss as may be sustained by appellee, with costs, until restitution, " in case the judgment from which the appeal is taken is affirmed," then the obligation to be void, otherwise to remain in force.

The bond recites that Rounds and the Best Brewing Company of Chicago (appellant,) are held and firmly bound unto appellee. It is signed by Rounds, and appellant's execution of it is as follows :

        "THE BEST BREWING Co. OF CHICAGO,    [SEAL]
            by Chas. Hasterlik, its Pres.    [SEAL] "

BLUM & BLUM, attorneys for appellant.

F. L. SALISBURY, attorney for appellee.

Mr. Justice Freeman delivered the opinion of the court.

The appeal bond sued upon in this case did not contain any description of the premises, for restitution whereof the judgment before the justice was rendered. It recites that appellee did, on the 14th of August, 1898, " recover a judgment against the above bounden Ruel G. Rounds, in an action for forcible entry and detainer of certain premises in said Cook county, and for restitution thereof," before T. L. Humphreville, Esq., a police magistrate.

Appellee introduced in evidence at the trial a certified copy of the order of judgment of the County Court in the case of Klassen v. Rounds, which does describe the premises for restitution of which judgment was there rendered. The certificate of the clerk identifies the case as of the same number as that in which the appeal bond now in controversy was filed. Upon this evidence the certified copy of the order was admitted over the objection of appellant. We think there was sufficient evidence to identify the premises, for restitution of which judgment was entered in the County Court, with the premises referred to in the bond. The latter was filed in the same case, and recites upon its face that it is the bond given in order to perfect the appeal of that identical case to the County Court. There is here no variance in the bond from the record. Nor is there any failure to comply with the requirement of the statute, which provides the condition of the bond shall be in this respect, that the obligor pay the damages and loss the plaintiff may sustain " by reason of the withholding of the premises in controversy." In Belloni v. Freeborn, 63 N. Y. 383, it was said that there is no rule exclusively applying to instruments of suretyship and requiring them to be in all cases interpreted with stringency and critical acumen against the creditor, and all ambiguities to be resolved to the advantage of the promisor, and every liability excluded that can by strained and refined construction be deemed outside of the agreement. If the terms are ambiguous, the ambiguity may be explained by the circumstances surrounding the parties, " and if the surety has left anything ambiguous in his expressions, the ambiguity be taken most strongly against

him. This certainly should be the rule to the extent that the creditor has in good faith acted upon and given credit to the supposed intent of the surety;" and "in such instruments the meaning of the written language is to be ascertained in the same manner and by the same rules as in other instruments."

It is further contended that there can be no recovery because the judgment was not "affirmed," as required by the condition of the bond. It is said in support of this contention that the judgment in the County Court upon the appeal from the justice is an original judgment and affirms nothing.

In cases of appeal from judgments of justices of the peace, it has been held under the statute then in force that trials in the Circuit and County Courts shall be *de novo*, upon evidence the parties may adduce, (Shook v. Thomas, 21 Ill. 87–89,) and such is still the practice. By that statute, the appellee had the right, under certain circumstances, to elect whether the appeal should be dismissed or he should have judgment for the amount of the judgment appealed from. Fergus v. Haupt, 54 Ill. App. 190; Rev. Stat., Chap. 79, Sec. 181.

According to the Century Dictionary the word affirm is defined as meaning, "to make firm, establish, confirm, or ratify, as, the Appellate Court affirmed the judgment." The judgment of the County Court had that effect. The rule of construction of contracts of voluntary obligation, whether as to sureties or principals, is to give that meaning and interpretation to the words used in the light of the whole instrument, together with any side light in case of ambiguity, as will carry out the evident intent and meaning of the parties thereto. Hotz v. Bollman Bros. Co., 47 Ill. App. 378–382. In that case it is also said that "statutory bonds taken by court officers will be liberally construed." In Shreffler v. Nadelhoffer, 133 Ill. 536, on pp. 552 and 555, it was said that the intention must be attributed to the obligors of entering into an obligation, every provision of which would be valid. In Beckman v. Kreamer, 43 Ill. 447–449, the judgment of the justice of the peace had not been technically affirmed in part as the statute

required, the case having been tried *de novo* in the Circuit Court, but the Supreme Court sustained the judgment. The language of the statute, providing (Chap. 57, Sec. 19) for an appeal bond in cases of forcible entry and detainer, is that it shall be conditioned, " in case the judgment from which the appeal is taken is affirmed, or appeal dismissed." A dismissal of the appeal would be a virtual affirmance. Young v. Mason, 3 Gil. 55–58. The word affirmed, as used in the statute, must have a broader meaning. In the case before us the condition of the bond sued on is in the statutory words, requiring that the judgment shall be affirmed. But when the case is tried *de novo*, as appeals from justices of the peace to the County Court have, as we have seen, been required to be, the judgment is not required to be a mere repetition of the judgment appealed from. The court has been required by statute (Rev. St., Chap. 79, Sec. 182) " to hear and determine the same in a summary way, according to the justice of the case, without pleading in writing." In such trials exceptions to proceedings before the justice are by that statute prohibited, and no judgment can be properly said to be, in the strictest sense, an affirmance where the proceedings appealed from are not under review. We think the word "affirmed," as used in the statute and in the bond, must be given a broader meaning, and that the condition was satisfied by the judgment rendered in the County Court, which was in effect an affirmance of the judgment appealed from.

The correctness of this conclusion in the present case is apparent from an inspection of the record, which shows the judgment to have been for restitution of the premises sued for before the justice, with costs. It is literally an affirmance or confirmation of the judgment of the police magistrate appealed from.

It is contended that the bond sued upon is not the bond of appellant, because the latter had no authority under its charter to execute such a bond as surety, and because its president had no authority to so bind the corporation.

It is doubtless true, as contended by appellant, that the

appellant corporation has no powers other than those conferred by its charter, and such incidental powers as are necessary to carry into effect those specifically conferred. Central Transp. Co. v. Pullman Palace Car Co., 139 U. S. 24. The charter of appellant states the object for which it is formed to be " the manufacture and sale of all kinds of beer, ale and porter, and the carrying on of a general brewing business in all its branches."

We think it fairly appears from the evidence that the appellant was selling beer to Rounds while he was in possession of the premises to enable him to retain which the bond here in controversy was executed. It furnished him beer both before and after the bond in question was executed. It would be a violent presumption to assume that it gave him the beer when its business was to sell it. The sale of beer is one of the objects for which the corporation was organized, and is therefore expressly within its corporate powers. The power to sell carries with it the power to employ all regular and legitimate means of obtaining and retaining customers. It was reasonable to suppose that if the appellee had obtained possession of the premises upon the judgment rendered in his favor by the police magistrate, and Rounds had been ousted from possession of the saloon, he would have ceased to buy beer of appellant, and the latter would have lost a customer. If the appellant, by its authorized agents, actually believed that Rounds was entitled to remain in possession under his lease, and that the judgment dispossessing him was wrong, then it may, with much show of reason at least, be contended that signing the bond as surety in order to enable him to continue his business, was an effort to protect a customer and promote the sale of the company's product; in other words, to do that which the appellant is by its charter expressly authorized to do. Under such circumstances the case may be said to come within the reasoning of the Supreme Court in B. S. Green Co. v. Blodgett, 159 Ill. 174. There the corporation was organized under the general laws of the State for the purpose of manufacturing and

dealing in saddlery, hardware, leather, shoe findings and vehicles. It subscribed $1,000 toward the purchase of a site for the location of a postoffice. It was held that the location of the postoffice, adjoining the place of business of the company, would be of direct financial and business advantage, would be likely to increase the number of its customers and the amount of its sales, and consequently add to its gains and profits; that the subscription was a reasonable exercise of the power possessed by the officers of the company, and the latter was held liable. In the present case there can be no doubt of the power of the officers of the appellant company to make any legitimate effort, and employ all honorable and lawful means of retaining customers. It is contended, not that the company had no power to do this, but that the means it employed are beyond its corporate power.

The contract in the case at bar is not executory, it is executed ; and appellant has had the benefit of it in retaining its customer, to whom, as appears by the evidence, it continued to furnish beer after the bond in controversy was executed, enabling the customer to retain possession of the premises. In Kadish v. G. C. E. L. & B. Ass'n, 151 Ill. 531–538, it is said :

" While a contract *ultra vires* remains executory, courts will interfere to prevent its enforcement, or on the application of a shareholder or other authorized person, prevent its execution ; but when it has been carried into effect, and the corporation has received the benefit of it, it can not plead the excess of its power in discharge of its liability."

In the case of Heims Brewing Company v. Flannery, 137 Ill. 309, it is said :

" The purpose of the defendant (Brewing Company) in entering into said contract   *   *   *   was to increase the sale and consumption of beer of its own manufacture. This was sought to be accomplished first by getting control of the premises where the plaintiffs had established and were carrying on a large saloon business, and secondly, by obtaining from the plaintiffs a contract not to engage in the saloon business themselves, nor allow that business to be carried on in that locality on premises owned

or controlled by them." *It was held that* "the defense of *ultra vires* can not avail the defendant. Even admitting that entering into said contract was in excess of the defendant's corporate powers, yet having entered into said contract and enjoyed its benefits, it should be estopped to appeal to the limitations imposed by its charter for the purpose of escaping payment of the stipulated consideration."

Not only does it appear that appellant in the case before us was benefited in retaining its customer by its execution of the bond in question, but a positive injury and loss was thereby inflicted upon the appellee. The appeal bond was taken by the police magistrate on or about August 17, 1894, and it was not until October 26, 1895, that appellee obtained, by the judgment of the County Court on the appealed case, a writ of restitution of the premises of which she had been, by the act of the appellant company, wrongfully deprived for more than fourteen months.

In the case National Home Building and Loan Association v. Home Savings Bank, 181 Ill. 35, it is said that whether a corporation is estopped to raise the question that a contract was *ultra vires* because it had received the benefit of it, depends upon the sense in which *ultra vires* is used; that "in the more proper and legitimate use of the term, it applies only to acts which are beyond the purpose of the corporation, which could not be sanctioned by the stockholders."

The purpose in executing the bond by appellant was not, in the case at bar, beyond the purpose of the corporation. That purpose was solely, so far as appears, precisely what it is said to have been in the Flannery case, "to increase the sale and consumption of beer of its own manufacture." This purpose was within its corporate powers, and could be sanctioned by its stockholders. The method of executing the purpose can doubtless be questioned. But the power to sign a contract, a note or a bond in pursuance of its legitimate business of buying material, manufacturing and selling its product, exists under appellant's charter. The method used to promote the sale of its product in the present instance by executing an appeal bond to retain a cus-

tomer may have been an improper exercise of the power. In the case of National Home Building Ass'n v. Bank, above referred to, the Supreme Court quotes approvingly what is said in Durkee v. The People, 155 Ill. 354, and points out the clear distinction between the exercise by a corporation of a power not conferred upon it, and the abuse of a general power. We regard the act of the appellant in executing the appeal bond here in controversy for the purpose of retaining a customer and promoting the sale of its product, as coming under the latter head, the abuse of a general power; and therefore within the line of decisions referred to in the case last above mentioned (Durkee v. The People), where a corporation is estopped from asserting that a contract is *ultra vires* when it has received a benefit under the contract, where the making of the contract is within the scope of the franchise, but the power was improperly exercised. The judgment of the Circuit Court must be affirmed.

MR. PRESIDING JUSTICE HORTON.

I must dissent in this case. I can not concur either in the conclusion, or in a considerable portion of the argument. In my opinion there is not sufficient testimony upon which to base the assumption that the appellant was pecuniarily interested in, or derived any benefit from, the appeal in the case where the appeal bond sued upon was given.