JONES v. VANCE SHOE CO.

(Circuit Court of Appeals, Seventh Circuit. February 28, 1902.)

No. 791.

CONTRACT—VALIDITY—VAGUENESS OF TERMS.
A written contract between two stockholders in a corporation, by which one agreed "to provide as a loan to the said (corporation) whatever additional capital is needed to provide a working fund," is too uncertain and vague to be enforceable in a court of law by an action to recover damages for its breach.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

M. A. N. Eastman, for plaintiff in error.

M. Nathan and G. Moore, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This an action of assumpsit upon a written contract between two stockholders in a corporation, to recover damages. There was a general demurrer to the declaration, which was sustained by the court below, and a judgment rendered in favor of the defendant. The writ of error is brought to reverse that judgment. The decision of the court seems to us manifestly correct. Among many other reasons, this one seems conclusive; that the contract is quite too vague and indefinite in its terms to be enforced in a court of law. There are three counts in the declaration, all setting out substantially the same supposed cause of action. The third count sets out the contract in full, which, so far as is material to the questions involved, is as follows:

"The said party of the first part hereby agrees to pay into the treasury of the said Smith & Jones Company the sum of twenty thousand dollars ($20,000) cash, and to guaranty, in lieu of the present guaranty of J. P. Smith, the notes of the Smith & Jones Company now held by the Continental National Bank of Chicago, to the amount of twenty-five thousand dollars ($25,000), and to provide, as a loan to the said Smith & Jones Company, whatever additional capital is needed to provide for a working fund."

The breach alleged is the failure to "loan to the said Smith & Jones Company whatever additional capital is needed to provide for a working fund." This stipulation is quite too uncertain and indefinite in many ways, and in all ways, within the well-established rule which has obtained in these cases since and before the days of Chitty.

Other allegations are that on June 1, 1896, the plaintiff was the owner of 500 shares of the stock of the Smith & Jones Shoe Company with a capital of $125,000. That the defendant was a stockholder in the sum of $5,000, and desired to acquire enough additional stock to become the owner of two-thirds of the capital. That plaintiff and defendant entered into an agreement that the plaintiff should deliver to the defendant 208 shares of his own stock and enough more to make two-thirds of the entire stock of the corporation, and to cancel all claims against the company. In consideration thereof, the defendant agreed to do and perform certain things, and among others to pay into the treasury of the company $20,000 in money. That this agreement was carried into effect, so that defendant became the owner of two-thirds of the stock, the plaintiff retaining 250 shares. That the business was continued two years, but the defendant did not (as alleged in one count) after six months continue to provide as loans to said company such additional capital as was needed to provide a working fund; whereby was lost to the plaintiff his 208 shares of stock so transferred, of the value of $20,800; also the claims of the plaintiff against the company of the value of $10,000, and his 208 shares of stock retained, to his damage $50,000. It also appears by recitals in the contract that the plaintiff had purchased all the merchandise indebtedness of the Smith & Jones Company, and was to get the money back that he had paid therefor from the funds to be

provided by the defendant. In other words, the company had failed and settled with its creditors, and Jones was the owner of all the claims against it, which he had purchased at some price not specified. The allegation in the third count which sets out the breach of the contract by defendant is as follows:

"And the said defendant, through its officers and agents, came into the management and control of said company, its affairs and business, and so managed the same, for a period of, to wit, two years, but wholly refused and neglected during said time to provide as a loan to said company whatever additional capital it needed to provide for a working fund, but on the contrary thereof caused it to incur a large amount of indebtedness to undertake and transact business beyond and in excess of its financial ability, by means whereof the credit, good will, and business of said company was destroyed, and that said defendant caused the same to be liquidated and wound up, and the said company, by reason of said failure of the defendant to keep its said promises, undertakings, and agreement, was unable to prosecute or continue the same, by reason whereof there was lost to the plaintiff the debt of said company to him," etc.

There are some allegations in the declaration charging negligence, but the action can only be held to be in assumpsit upon the contract. It appears by all three counts that the defendant was the owner of two-thirds of the capital stock of the company, and the plaintiff the owner of less than one-third. The defendant then had a stronger interest than the plaintiff in the success of the company. By the allegations of the declaration, defendant was the one who suffered most by the failure of the company. It put $20,000 in cash into the treasury of the company when the contract was made, and for six months it furnished all the money the company needed to carry on its business. If the business was being carried on at a loss, why should the defendant continue to pour in more money for an indefinite time? Certainly the contract by its terms did not require it. Under such a contract, how long must the defendant be held to a losing venture? As no time was agreed upon by the parties, it would certainly seem, if there were nothing but losses upon losses, that six months would be a reasonable time. And if the directors were not to determine that question, who should it be left to? Certainly not to a jury, for they would know nothing of the needs of the business. But by law it belonged to the directors to determine all these things. Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; Durkee v. People, 155 Ill. 354, 40 N. E. 626, 46 Am. St. Rep. 340. How long credit was to be given, what the rate of interest, and what security for the repayment of the loans? None of these things are provided for in the contract, and it would be quite impossible for a court or jury to determine them and so make a contract for the parties. The proper management of a corporation is in the hands of the directors. The scope of the business, the amount of money required to conduct it, the wisdom and propriety of borrowing money at all for that purpose, and how long to continue the borrowing, would belong exclusively to them. But there is no allegation that they determined on anything or asked for or demanded more money than the company received from the defendant to con-

tinue the business. It is certainly not the province of a minority stockholder to determine any of these things. Again, there being no time fixed for the various loans, they would be due immediately upon demand, so there could be no damage more than is merely nominal for not making the loans. As was said in a very similar case by the United States circuit court of appeals for the Eighth circuit in Kelly v. Fahrney, 38 C. C. A. 106, 97 Fed. 176:

> "Since no agreement appears to have been made by the defendant to make a loan to the White Cliffs Company for any definite period, the law implies that the borrower was under obligation to return it on demand (Thompson v. Ketchum, 8 Johns. 190, 5 Am. Dec. 332; Purdy v. Philips, 11 N. Y. 406); and no substantial damage was occasioned by a refusal to loan money which the corporation was legally bound to repay forthwith (Bradford, E. & C. R. Co. v. New York, L. E. & W. R. Co., 123 N. Y. 316, 25 N. E. 499, 11 L. R. A. 116)."

It is also well adjudged in that case that a judgment will not be reversed by an appellate tribunal and a new trial granted when it appears from the statement of the cause of action that the plaintiff in error is only entitled to nominal damages, citing many cases. Again, suppose the money had been advanced to pay off all the indebtedness of the company. It would be only substituting one creditor for another, and there would be no substantial damage for such a breach of contract. But we are content to place the affirmance of the judgment upon the one ground of the entire uncertainty and vagueness of the stipulations in the contract. See Chitty, Cont. (11th Am. Ed.) 92; Erwin v. Erwin, 25 Ala. 236; Van Schaick v. Van Buren, 70 Hun, 575, 24 N. Y. Supp. 306; Hart v. Railroad Co. (Ga.) 28 S. E. 637; United Press v. New York Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288. In this case the court of appeals of New York lays down the rule as follows:

> "The difficulty with this instrument lies deeper. It lacks support in one of its essential elements—in the absence of a statement of the price to be paid. That was a defect which was radical in its nature and which was beyond the reach of oral evidence to supply, for, if the intention of the parties in so essential a particular cannot be ascertained from the instrument, neither the court nor the jury will be allowed to make an agreement for them upon the subject. It is elementary in the law that, for the validity of a contract, the promise or the agreement of the parties to it must be certain and explicit, and that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol proof cannot be resorted to."

Marble v. Oil Co., 169 Mass. 563, 48 N. E. 783.

In that case the contract was about as indefinite as it is in the case at bar. The oil company had contracted to sell to the plaintiff its oil "on such reasonable terms as to enable him to compete successfully with other parties selling in the same territory." The court in its opinion says:

> "We are of opinion that it was too indefinite and too general to be enforceable as a contract. * * * The plaintiffs were never bound to buy their oil from the defendant for a single day longer than they chose to. So far as appears, the arrangement was to continue only during the pleasure

of the parties. It called for no formal notice to terminate it. * * * We are of opinion that there was no evidence of liability under either of the contracts set out in the declaration."

Flaherty v. Cary (Sup.) 70 N. Y. Supp. 951.
Judgment affirmed.