THE CINCINNATI MUTUAL HEALTH ASSURANCE CO.

*v.*

RUDOLPH ROSENTHAL.

1. FOREIGN CORPORATIONS—*powers of the States to prescribe conditions.* It is competent for the several States of the Union to prescribe the conditions upon which an insurance company, or other corporation created in another State, may transact business within their borders. Corporations

55    85
36a 432

55    85
40a 123

55    85
155  367

55    85
162  110

55    85
61a   42

55    85
65a  275

55    85
77a  471

55    85
208  2426

are not citizens of the State in which they were created, within the mean-
ing of the federal constitution, so as to exempt them from the operation
of such conditions.

2. Nor is this power of the States to impose conditions upon foreign
corporations, at all affected by the permission given in their charters to do
business in other States than that of their creation. The boundary of each
State is the territorial limit of its legislative power.

3. SAME—*their contracts declared to be unlawful, are void.* Under the act
of 1855, it is unlawful for any insurance company incorporated in another
State, to transact any business of insurance in this State, without first pro-
curing a certificate of authority from the auditor of State, such certificate
to be based upon a statement to be made by the company, the character of
which is prescribed in the act.

4. So where an insurance company, incorporated in another State, under-
took to transact business of insurance in this State, without having com-
plied with the conditions of the act of 1855, receiving from a party assured
his promissory note for stock in the company and for premium, the con-
tract being unlawful under the statute, the note was held to be absolutely
void in the hands of the company, and this, notwithstanding the statute
imposed a penalty upon the company for doing business in this State in vio-
lation of its provisions.

5. *Quære,* whether the holder of a policy of insurance, issued in this
State by a foreign corporation which had not complied with the conditions
of the act of 1855, would have his remedy against the company in case of
loss.

APPEAL from the Recorder's Court of the city of Chicago;
the Hon. WILLIAM K. MCALLISTER, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. MOORE & CAULFIELD, for the appellants, contended
that the act of 1855, requiring insurance companies created in
another State to comply with certain conditions before they
are allowed to transact business in this State, does not render
contracts entered into by such companies void, but simply
imposes a penalty for a non-conformity to the law; that is, the
law punishes the agent of the company who undertakes to act
in violation of its provisions, but does not affect the validity
of the contract entered into by the corporation through such
agent.

Messrs. ROSENTHAL & PENCE, for the appellee.

Corporations are not citizens within the meaning of that clause of the constitution of the United States, which provides "that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States." Nor are their contracts within that clause giving to congress power " to regulate commerce with foreign nations and among the several States." *Ducat* v. *The City of Chicago*, 48 Ill. 173 ; *Paul* v. *Virginia*, 8 Wallace, 168 ; *Bank of Augusta* v. *Earle*, 13 Peters, 519.

If the statute creating a corporation does not confer upon it the power to make contracts beyond the limits of the State in which it has its existence, then contracts made by it outside of such State are void. *Dartmouth College* v. *Woodward*, 4 Wheaton, 636 ; *Bank of the U. S.* v. *Dandridge*, 12 Wheaton, 64 ; *Bank of Augusta* v. *Earle*, 13 Peters, 519.

But granting that the insurance company in this case, the appellant, had power by the law of its creation, enacted in another State, to come into this State and make contracts, still, inasmuch as the company had not complied with the conditions imposed by the act of 1855, its contracts entered into in this State are unlawful and void. Act of February 14, 1855, Scates' Comp. 596.

Every power which a corporation exercises in another State depends for its validity upon the laws of the sovereignty in which it is exercised, and a corporation can make no valid contract without their sanction, express or implied. Such a contract, if made, is absolutely void. *Bank of Augusta* v. *Earle*, 13 Peters, 519 ; *Paul* v. *Virginia*, 8 Wallace, 168 ; Story on Conflict of Laws, sec. 37.

Where a contract is *unlawful*, as being against the express provisions or general policy of any particular statute, it is void. And if the act is simply made penal by statute, without an express prohibition, such contract is void, and will not be enforced by the courts. *Wheeler* v. *Russell*, 17 Mass. 258 ; *Munsell* v. *Temple*, 3 Gilm. 93 ; *Beasley* v. *Bignold*, 5 B. & Ald. 335.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellants, in the recorder's court of Chicago, against appellee, to recover the unpaid balance of a note. The note was given to appellants for stock in the company and for premium, subject to the call of the directors of the company. The general issue was filed, also a special plea. The latter plea, in substance, averred that appellants were an assurance company, created under the laws of the State of Ohio, and not under or by the laws of this State, for the purpose of insuring the health of persons against personal injury or disability; that at the time the note was given, appellants were an insurance company, under the laws of Ohio, and had come into this State to transact business as such; that in consideration appellee would pay to appellants $150 cash, and would execute to the company a note for $350, due on demand, to be paid subject to the call of the directors of the company, did unlawfully enter into a contract to insure the health of appellee, for the period of five years, in the sum of twenty-five dollars for each week he might be prostrated by disease during the next five years, whether from disease or by accident, which should prevent him from prosecuting any kind of business, and the company then issued a policy on these terms to appellee. Appellants also agreed to issue to appellee a certificate of stock of its guaranteed capital, in the company to the amount of $500, which was issued and delivered, and was by him accepted when he paid the money and gave the note sued upon in this case.

It was further averred that, at the time this agreement and transaction were consummated, appellants were a corporation created by the laws of the State of Ohio, and had not, at any time previous thereto, furnished the auditor of this State with the statement of the condition and affairs of the company, under the oath of the president or secretary of the company, showing the facts required by the laws of this State, nor had the auditor issued to the company, or any agent, any authority to

transact business in this State, which, it is averred, rendered the note sued upon void and of no binding effect. To this plea, appellants filed a demurrer, which was overruled by the court, and judgment was rendered on the demurrer in favor of appellee, to reverse which the record is brought to this court by appeal, and appellants assign the overruling of the demurrer as error.

This record presents the question, whether foreign insurance companies can, without first complying with the laws of our State, enacted for their regulation, make contracts which they may enforce. The general assembly, on the fourteenth of February, 1855 (Scates' Comp. sec. 1, p. 596), enacted, that it should not be lawful for any agent or agents of any insurance company incorporated by any other State than this, to, directly or indirectly, take risks, or do or transact any business of insurance in this State, without first procuring a certificate of authority from the auditor of State. And before obtaining such certificate, such agent is required to furnish the auditor with a statement, under oath, of the president or the secretary of the company, which shall show—First, the name and locality of the company; second, the amount of its capital stock; third, the amount paid up; fourth, the assets of the company, and of what they consist; fifth, the amount of liabilities, etc.; sixth, losses adjusted, due, etc., which is required to be filed with the auditor, together with a written instrument, under the seal of the company, signed by the president and secretary, authorizing such agent to acknowledge service of process on behalf of the company, and consenting that service of process upon him shall be held valid, and waiving all error by reason of such service. The act then requires that the company shall possess a capital of at least $100,000 of actual capital invested in stocks at par, or upwards, or in bonds or mortgages of real estate worth double the amount for which it is mortgaged, as a condition to their doing business in this State.

Now, the demurrer admits that none of these requirements had been observed by appellants. The act, it is seen, in express language, prohibits such companies from effecting insurance or

transacting business in this State until they have filed the statement and consent required. Corporations created in another State are not citizens of such State within the meaning of the federal constitution. This question is settled by the case of *Ducat* v *City of Chicago*, 48 Ill. 173, and the case of *Paul* v. *The State of Virginia*, 8 Wal. 168, subsequently decided by the Supreme Court of the United States. We regard this question as settled, and shall, therefore, omit any discussion of that point. In those cases, it was held, that the various State legislatures have the power to impose conditions upon which insurance, or other corporations chartered beyond the State, may do business within its territory; that the right of protecting their citizens from the fraud and imposition of insolvent or spurious corporations of this character, created by other States, was clearly within the scope of legislative power possessed by the various States of the Union. And in this view of the case, it cannot matter that the charter of this Ohio company declared that it might do business in other States. If such a provision was inserted, it could only operate as an authority to the company, to do so on such terms as other States might prescribe. That State does not, nor can it, have any power to enact laws regulating the actions of persons, the title to property, or the effect of contracts, in this or any other State. The boundary of that State is the limit of its legislative power. If such a provision is contained in the charter of appellants, it was not enacted to become the law of other States, but simply, as we have said, to license the company to transact business beyond the limits of their State, with the consent of the foreign jurisdiction in which they proposed to act. This company, then, were bound to conform to the law to which we have referred, before they were authorized to effect insurance or make contracts in this State.

From this enactment, it is manifest that our general assembly adopted these provisions as a matter of general policy, intended and well calculated to protect the people of the State from loss by foreign insurance companies, who are insolvent or

worthless, by requiring all foreign companies, before they could transact business in this State, to make an exhibit of their condition, and file it with the auditor of public accounts, by which our citizens could know whether such a company was responsible before entering into contracts of insurance with them. That such provisions were demanded, is no doubt true, and that they are highly remedial, we do not doubt. The note was made and delivered, and the policy given and the contract consummated in this State, in defiance of a law which is so plain in terms, that it can bear no construction, and which no one can misunderstand, declaring all such contracts unlawful. It says, it shall not be lawful for any such agent, directly or indirectly, to take risks, or transact any business of insurance in this State, until they comply with the terms prescribed in the act. To permit the company, when they admit that they have disregarded all of these requirements, to recover, would be for the courts to disregard the clearly expressed will of the general assembly, and to say what it has said shall be unlawful, is and shall be lawful and binding. To enforce the payment of this note would be, virtually, to repeal a plain enactment of the legislature.

When the legislature prohibits an act, or declares that it shall be unlawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void. To hold otherwise would be to give the person, or corporation, or individual, the same rights in enforcing prohibited contracts, as the good citizen who respects and conforms to the law. To permit such contracts to be enforced, if not offering a premium to violate a law, it certainly withdraws a large portion of the fear that deters men from defying the law. To do so, places the person who violates the law on an equal footing with those who strictly observe its requirements. That this contract is absolutely void as to appellee we entertain no doubt. See

*Munsell* v. *Temple*, 3 Gilm. 93. That courts may have held, that when a statute has prohibited the doing of an act, and imposed a penalty, simply, the act was not void, may be true, but we doubt the correctness of such a construction.

That the legislature imposed, by a subsequent section of the act, a penalty for the violation of the provisions of the law, does not, in the remotest degree, legalize or give validity to the note. It but shows that the general assembly intended to adopt such measures as should compel the observance of the law. Had no penalty been provided, no one would have, for a moment, hesitated to say, that the note was, under this law, utterly void; and, if so, why should we hold, that the imposition of the penalty alters, or changes in the slightest degree, the previously declared will, that the act should be unlawful. In the case of *Bensley* v. *Bignold*, 5 Barn. & Ald. 335, where a printer had brought an action to recover for the price of paper furnished, and printing a pamphlet entitled, " An elucidation of the system of fire and life insurance," it was held, that a recovery could not be had, because the name of the printer, the place of his abode, and the place where printed, were omitted from the front page of the pamphlet, contrary to an act of Parliament, which prescribed a penalty of £20 for such omission.

In the case of *Law* v. *Hodgson*, 2 Camp. 147, it was held, that a person selling bricks under the statutable size, who thereby forfeited a penalty of twenty shillings, could not recover for them. This case is also reported in 11 East, 300. In the case of *Langton* v. *Hughes*, 2 Maule & Selw. 593, it was held, that a druggist who sold drugs to a brewer, knowing they were to be used, contrary to the statute, in manufacturing beer, could not recover. And Lord ELLENBOROUGH places it upon the ground that the statute was designed to protect the public health and the public revenue. And LEBLANC said, in delivering his opinion, that it " is an established principle, that the court will not lend its aid in order to enforce a contract entered into with

a view of carrying into effect anything which is prohibited by law." It has been held, that where a person sells goods, knowing that they are intended to be smuggled, he is not permitted by the policy of the law to recover on such a contract. *Briggs* v. *Lawrence*, 3 T. R. 454; *Clugus* v. *Pinckham*, 4 T. R. 466; *Waymell* v. *Reid*, 5 T. R. 599. In the decision of these cases, a number of other adjudged cases are referred to, which support and illustrate the rule. And *Wheeler* v. *Russell*, 17 Mass. 258, is to the same effect. Many other decisions could be referred to in support of the doctrine, were it deemed necessary.

This contract on the part of the insurance company is against the manifest policy of the law; is expressly made unlawful by the statute, and prohibited. It is, therefore, void, and of no effect. Notwithstanding the company have acted in contravention of the statute, and have no right to recover, we are not prepared to hold that the appellee has so acted that, had he sued upon the policy before repudiating it, he could not have recovered upon its breach. But that question is not now before the court, and hence it is not discussed or determined. The plea presented a good defense, and the demurrer was properly overruled, and the judgment of the recorder's court is affirmed.

*Judgment affirmed.*