THE ILLINOIS STATE TRUST COMPANY

*v.*

ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY CO.

*Opinion filed February 17, 1904—Rehearing denied April 12, 1904.*

1. EMINENT DOMAIN—*power of eminent domain can be exercised only as prescribed by the legislature.* The power of eminent domain is in-cident to sovereignty and inherent in the State, and can be exer-cised only on the occasion, in the mode and by the agency prescribed by the legislature.

2. SAME—*foreign corporation cannot exercise power of eminent domain except by consent of the legislature.* The legislature may delegate the power of eminent domain to a foreign corporation, but the latter can exercise such power only when so delegated, notwithstanding its power in that respect granted by its charter.

3. SAME—*acts authorizing condemnation must be strictly construed.* The power of eminent domain is in derogation of common right, and all acts conferring such power must be strictly construed and the power denied unless clearly conferred both by the letter and the spirit of the act.

4. SAME—*it is for the courts to say whether the statutory conditions for exercise of power exist.* The question under what conditions the power of eminent domain may be exercised is purely legislative, but it is for the courts to decide, when called upon, whether the statutory conditions authorizing the exercise of such power exist.

5. RAILROADS—*act of 1899 is only authority for foreign corporations to condemn property.* The act of 1899, (Laws of 1899, p. 116,) relating to the purchase by foreign corporations of railroad or toll bridges or railroads or parts of railroads in Illinois, is the only authority for the exercise of the power of eminent domain in Illinois.

6. SAME—*act of 1899 construed.* The act of 1899, (Laws of 1899, p. 116,) authorizing a foreign corporation to purchase a railroad in Illinois and to thereafter exercise the powers possessed by the company whose road was purchased, including the power of eminent domain, by its terms expressly forbids the purchase of any parallel or competing line.

7. SAME—*when a foreign corporation cannot exercise power of eminent domain under act of 1899.* A foreign corporation cannot exercise the power of eminent domain in Illinois, under the act of 1899, by virtue of its purchase of a line of railroad in Illinois, where such line runs parallel to the line of the petitioner in another State, the two being separated only by the boundary river and running from connected points on opposite sides of the river.

8. SAME—*foreign corporation cannot claim power to condemn, regardless of legality of its purchase.* Where, on motion to dismiss a petition by a foreign corporation to condemn land, the petitioner, in attempting to establish its right to exercise such power under the act of 1899, shows the purchase of a railroad which, by the express terms of the act, is prohibited, the petition must be dismissed, notwithstanding the legality of the petitioner's purchase has not been questioned by the State on *quo warranto.* (*Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 Ill. 634, distinguished.)

APPEAL from the County Court of St. Clair county; the Hon. J. B. HAY, Judge, presiding.

WISE & McNULTY, for appellant.

W. S. FOREMAN, (L. D. TURNER, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from the judgment of the county court of St. Clair county in a condemnation proceeding, fixing the compensation to be paid by appellee, a foreign corporation, to appellant for a strip of land one hundred feet wide lying along and adjoining the original right of way of the St. Louis Valley Railway Company, in said county.

The petition for condemnation was filed by appellee on May 29, 1903, and alleged that petitioner was a for-

eign corporation formed by the consolidation of corporations organized and existing under the laws of the States of Missouri and Arkansas and qualified under the laws of this State to do business in this State; that it was the owner of a railroad in this State running through the counties of St. Clair, Monroe, Randolph, Jackson, Union, Alexander and Williamson, which was in operation, and that it was necessary in the operation of the said line of railway to have railroad yards located on the lands described in the petition. Appellant, the owner of the lands sought to be taken and appropriated to the use of the petitioner, moved the court to dismiss the proceeding, for the reason that the petitioner was a foreign corporation organized and existing under the laws of the States of Missouri and Arkansas and not organized or chartered under the laws of this State, and that it had no right to institute the suit or exercise the power of eminent domain by condemning land in this State. Upon the hearing of the motion the petitioner offered evidence for the purpose of proving the incorporation of the Cairo and Fulton Railroad Company in the State of Arkansas and the St. Louis and Iron Mountain Railroad Company in the State of Missouri, and the consolidation of the two under the name of the St. Louis, Iron Mountain and Southern Railway Company, the petitioner, by virtue of the statutes of said States,—which evidence, for the purpose of this decision, will be assumed, without passing on the question, to have been competent and sufficient for the purpose. Petitioner also offered in evidence articles of incorporation of the St. Louis Valley Railway Company for the construction and operation of a railway from East St. Louis through the counties of St. Clair, Monroe, Randolph, Jackson, Union and Alexander, to Cairo, and a deed of conveyance of said railway executed by the St. Louis Valley Railway Company to the petitioner. Defendant objected to the introduction of this deed on the ground that the St. Louis Valley railway

was a competing and parallel railway with the Iron Mountain and Southern railway, and that by the statute a conveyance to the petitioner was prohibited. The objection was overruled. The petitioner also introduced testimony that the St. Louis Valley railway was finished from the city of East St. Louis a distance of one hundred and twenty-two miles, to a small place called Gales, about two miles north of Thebes, and was in the possession of the petitioner. The witnesses testified that the general course of said railway was a little west of south, along the east side of the Mississippi river; that the St. Louis, Iron Mountain and Southern railway of the petitioner was on the west side of the Mississippi river, in Missouri, and ran in the same general direction; that the two roads were practically parallel to Thebes, and when the St. Louis Valley railway should be completed to Cairo they would run in the same direction and be substantially parallel lines; that the St. Louis, Iron Mountain and Southern railway started at St. Louis and ran to a point opposite Cairo, and that railroads so situated and running in the same direction are competitors for business. The court overruled the motion of defendant to dismiss the proceeding and empaneled a jury to ascertain the compensation to be paid to the defendant. A verdict was returned and a judgment entered upon it.

The power of eminent domain is an incident to sovereignty and inherent in the State, and can be exercised only on the occasion, in the mode and by the agency prescribed by the legislature. No other State can authorize the exercise of that power within this State, and the laws under which petitioner has its existence could not and do not purport to do so. The petitioner can have no legal existence in this State, outside of the boundaries of the States where it was incorporated, and can exercise none of the powers conferred by its charter except by consent of the legislature of this State. It is competent for the legislature to delegate the exercise of the power

of eminent domain to a foreign corporation, (13 Am. & Eng. Ency. of Law,—2d ed.—858,) but the power can only be exercised when so granted. The power to take the property of the individual without his consent is against common right, and all acts authorizing such a taking are to be strictly construed. (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse*, 116 Ill. 449; *Chicago and Northwestern Railway Co.* v. *Galt*, 133 id. 657.) Unless both the letter and the spirit of the statute relied upon clearly confer the power it cannot be exercised. (*Ligare* v. *City of Chicago*, 139 Ill. 46.) The question under what conditions the power shall be exercised is purely legislative, but it is the duty of the court, when called upon, to decide whether the statutory conditions exist and whether the taking of the property is within the statutory power conferred. *Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295.

The general statute providing for the exercise of the right of eminent domain does not embrace foreign corporations, and the only authority granted to them is contained in the act entitled "An act concerning the rights, powers and duties of certain corporations therein mentioned, authorizing the sale and transfer of any railroad, or railroad and toll bridge, and other property, franchises, immunities, rights, powers and privileges connected therewith or in respect thereto, of any corporation of this State to a corporation of another State, and prescribing the rights, powers, duties and obligations of the purchasing company," approved April 21, 1899. (Laws of 1899, p. 116.) That act consists of a single section, and provides, in substance, that whenever a corporation organized under the laws of another State shall be in possession of a railroad situated in this State belonging to a corporation of this State, or shall own or control all of the capital stock of such corporation of this State, then the corporation of this State may sell and convey and the corporation of the other State may purchase, in fee simple or otherwise, such railroad, and hold, in fee

simple or otherwise, the property so purchased, and may exercise the powers, privileges and franchises of the corporation whose property is so purchased, and may, when necessary or proper, exercise, in the same manner as railroad corporations in this State are authorized to, the power of eminent domain in acquiring lands or property necessary or convenient for the betterment, maintenance, extension or operation of such railroad, and for the construction, use and maintenance of spurs, switches, side-tracks, depots, stations, terminals and other franchises to be used in connection with such railroad, with the following proviso: "That this act shall not be construed so as to permit any railroad company to purchase any parallel or competing line of railroad in this State."

The evidence showed that the railroad of the petitioner and the one purchased within this State are parallel and competing roads, starting from St. Louis and East St. Louis, on the opposite sides of the Mississippi river, with connections through a terminal association at that point and running to points on the opposite banks of the same river. The fact that they are separated by the river, constituting another public highway, is, of course, of no consequence, and inasmuch as the act prohibits the purchase by a foreign corporation of a parallel or competing line of railroad in this State, the fact that they are in different States makes no difference. The purchase is one that is prohibited by the statute.

But it is contended that if the purchase was illegal, the petitioner could still condemn the defendant's lands, and the legality of the purchase could only be inquired into by *quo warranto.* Counsel say that we so decided in the case of *Thomas* v. *St. Louis, Belleville and Southern Railway Co.* 164 Ill. 634. In that case a corporation of this State authorized to construct and maintain a railroad and to take private property for its use by the exercise of the power of eminent domain, filed its petition to condemn a right of way. There was no claim that the

franchise of the petitioner had been forfeited or that the power to condemn had not been granted to it, but the defendants offered to prove that the railway of petitioner was a parallel line with that of another railway company, not a party to the proceeding, and that both lines were operated by the Illinois Central Railroad Company, which was not a party. The claim was, that petitioner had entered into an illegal combination with another company, by which it might have exposed itself to penalties or to a forfeiture, but it was still in the possession and use of its franchise. A private individual cannot question the legal existence of a *de facto* corporation, and it was held that the court would not try the question whether the petitioner had in some way violated the law. In this case the motion to dismiss for want of power to condemn land in this State did not involve the question of the legal existence of the corporation where it was organized. The question was whether it had acquired the power to condemn the defendant's lands under the provisions of the act of 1899. That is not the same question decided in the case relied upon. The petitioner, as a corporation of another State, was required to bring itself within the terms of the act, and could only do so by proving the purchase of the St. Louis Valley railway. It could only exercise the power to take the defendant's lands against its will by proving such purchase, and it could not make the purchase except under the conditions prescribed by the act. Instead of proving a purchase authorized by the statute, which would give it a right to condemn land for the improvement, maintenance and use of the railroad so purchased, it proved a purchase prohibited by the act itself. In attempting to prove the power to condemn it proved the illegality of the purchase and transaction. Petitioner was asking the aid of the court to exercise a right which it claimed had been delegated to it by the legislature of this State, and the evidence showed that it had not complied with the con-

dition upon which the power was delegated, but, on the contrary, had violated it. This court has uniformly held that a foreign corporation which has not complied with the conditions prescribed for transacting business in this State cannot maintain an action in the courts of the State. (*Cincinnati Mutual Health Assurance Co.* v. *Rosenthal*, 55 Ill. 85; *Supreme Order of Iron Hall* v. *Grigsby*, 178 id. 57; *Thompson Co.* v. *Whitehed*, 185 id. 454.) The legislature have power to impose such conditions upon foreign corporations for the exercise of powers or privileges in this State as they may choose, and such conditions must be complied with. The purchase of a railway prohibited by the act is illegal and void, and while in such a case the State might oust the foreign corporation from the exercise of the franchise within this State, we do not think that the courts ought to entertain a petition for condemnation where the petitioner does not bring itself within the statute delegating the power to condemn.

The judgment of the county court of St. Clair county is reversed and the cause remanded.

*Reversed and remanded.*