## United Lead Company v. J. W. Reedy Elevator Manufacturing Company.

### Gen. No. 12,192.

1. FOREIGN CORPORATION—*effect of failure to comply with statutory regulations.* Foreign corporations failing to comply with the statutory regulations providing for their obtaining licenses, appointing agents, etc., are excluded from the courts of this State so far as the enforcement of contracts running to them is concerned; the rights of action upon such contracts are not merely suspended until compliance has been made.

2. ESTOPPEL—*what does not operate as, to prevent pleading inability or incapacity of foreign corporation to maintain action.* The mere fact that a defendant may have purchased and received merchandise for which the action is brought, does not operate as an estoppel against such defendant from pleading the incapacity of the foreign corporation as plaintiff to maintain the action.

BROWN, J., dissenting.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed January 4, 1906.

**Statement by the Court.** September 8, 1904, appellant, a New Jersey corporation, doing business in the State of Illinois, brought suit, for goods sold and delivered, against appellee. December 7, 1904, appellee moved to dismiss upon the ground that appellant at the time of bringing suit and when the motion was made was and is a foreign corporation, doing business in Illinois, and had not filed with the Secretary of State its articles or certificate of incorporation, and was not authorized to do business in Illinois. This motion was supported by an affidavit. Upon the hearing on this motion it was denied, and appellee was given leave to file pleas instanter. In obedience to this order appellee filed the general issue, and a special plea, which is in substance as follows:

And for a further plea, by leave of court, defendant says that plaintiff is organized for profit, is not a railroad or telegraph company, nor in the insurance, banking or money loaning business; that the merchandise, for which suit is brought, was sold to defendant and by it bought within the State of Illinois since January 1, 1902; plaintiff had not, at commencement of this suit, as by the statute provided, filed with the Secretary of State its articles or certificate of incorporation, statement of capital stock represented in Illinois, nor designated officer on whom service could be had; nor had the Secretary of State, at commencement of suit, issued certificate entitling plaintiff to do business in Illinois as provided by statute; nor had plaintiff prior to or at

the commencement of suit been licensed to do business in Illinois as by statute provided; plaintiff at the time of commencement of suit had no certificate of authority nor had any ever been issued to it to do business in Illinois as provided by the statutes of said State. Wherefore, by force of the statute in such case made and provided, the plaintiff cannot maintain its aforesaid action. And this defendant is ready to verify. Therefore, it prays judgment if the plaintiff ought to have its aforesaid action against it, etc.

Appellant filed a *similiter* to the general issue, and demurred to the special plea. The court overruled the demurrer. Appellant elected to stand by the demurrer. Thereupon the court ordered: "Therefore it is considered by the court that defendant go hence without day and that plaintiff takes nothing by the aforesaid action," and entered a judgment for costs against appellant. The case is brought to this court by appeal.

Appellant assigns as error the action of the trial court in overruling its demurrer and entering judgment in bar of its cause of action.

The Act of 1897 as amended by the Act of 1899, provides, in section 67b, that "Every corporation for pecuniary profit formed in any other State * * * before it shall be authorized or permitted to transact business in this State, or to continue business therein, if already established, shall designate some person as its agent or representative in this State," etc. And by section 67d, that "Every foreign corporation amenable to the provisions of this act, which shall neglect or fail to comply with the conditions of the same as herein provided, shall be subject to a fine of not less than $1,000.00 to be recovered," etc., "in addition to which penalty * * * no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit, or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort." Sections 67b, 67c, and 67d, Chapter 32, R. S. Hurd 1903, p. 486.

Charles H. Blatchford, for appellant; Ralph M. Shaw, of counsel.

United Lead Co. v. Reedy Elevator Mfg. Co.

. ALBERT N. & EDW. P. EASTMAN, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant says: "If these statutes shall be construed as prohibiting for all time a foreign corporation from recovering in the courts of this State upon a contract into which it may have entered prior to the time when it takes out a license, then the judgment of the Circuit Court was right, and the statute would then be a statute in bar, and was properly so pleaded. If, on the other hand, the proper construction of this statute is that a foreign corporation may not obtain relief in the courts of the State until it shall first obtain a license authorizing it to do business in the State, and that when such license is obtained the courts of the State are open to it, then the decision of the Circuit Court was wrong and the demurrer to the special plea should have been sustained, for it is the well settled law that matter which merely suspends the right of action must be pleaded in abatement."

We believe that the first one of these two propositions is the law of this State.

It is elementary that the power of each State to exclude a foreign corporation, or to admit it upon such terms as the State may see fit to impose, is plenary.

In Munsell v. Temple, 3 Gilm., 93, suit was brought upon a note given by Munsell to the county treasurer in payment for a license to keep a grocery or bar; it was held, that as the statute required the payment of the license fee to precede the granting of the license, the note was void. Justice Koerner speaking for the court, said: "As a general rule, where the undertaking upon which the plaintiff relies, was either upon an unlawful consideration, or to do an unlawful act, the contract is void; and this whether the contract be illegal as being against the rules of the common law, or the express provisions or general policy of any particular statute. It is needless to cite authorities to so well established a principle. I will give, however, one reference, the case of Wheeler v. Russell, in the 17th Mass., 257, where there

12

is a very full and interesting collection and review of English and American cases upon this subject."

In Cincinnati, etc. Co. v. Rosenthal, 55 Ill., 85, appellant brought an action of assumpsit against appellee to recover the unpaid balance of a note, given 'for stock in the company and for premium, subject to the call of the directors of the company. In a special plea it was averred, in effect, that appellant was a foreign insurance company and had never obtained, as was required by statute, a certificate of authority from the auditor of the State of Illinois to transact business in this State, and that therefore the note sued upon was void. A demurrer to this plea was overruled. Upon appeal, the Supreme Court, among other things, say: "The note was made and delivered, and the policy given and the contract consummated in this State, in defiance of a law which is so plain in its terms, that it can bear no construction, and which no one can misunderstand, declaring all such contracts unlawful. It says, it shall not be lawful for any such agent, directly or indirectly, to take risks, or transact any business of insurance in this State, until they comply with the terms of the act. To permit the company, when they admit that they have disregarded all of these requirements, to recover, would be for the courts to disregard the clearly expressed will of the general assembly, and to say what it has said shall be unlawful, is and shall be lawful and binding. To enforce the payment of this note would be, virtually, to repeal a plain enactment of the legislature." * * * "That the legislature imposed, by a subsequent section of the act, a penalty for the violation of the provisions of the law, does not, in the remotest degree, legalize or give validity to the note." * * * (Citing cases.) "This contract on the part of the insurance company is against the manifest policy of the law; it is expressly made unlawful by the statute and prohibited. It is, therefore, void and of no effect."

In Stevens v. Pratt, 101 Ill., 220, the court say: "Counsel ask the question, 'Can it be seriously pretended that a foreign corporation excluded from the State can make a contract in

this State without authority and enforce it in the courts of this State?' We answer, certainly not."

In Penn v. Bornman, 102 Ill., 523, the People's Bank of Belleville filed a claim against the estate of Bornman, deceased, which upon hearing was disallowed. Bornman, at the time the indebtedness was incurred, was a director of the bank. The charter of the bank contained a provision that "No director of said corporation shall be indebted to said corporation, either directly or indirectly, or individually, at any time, to an amount greater than 75 per centum of the capital stock held by such director in his own name, in good faith as his own." It was conceded that the debt evidenced by the claim was incurred in violation of this provision. When the cause reached the Supreme Court it said: The question in the case is, "Could the bank, in palpable violation of this express prohibition in its charter, go on and contract, *ad libitum,* with its directors, and yet be permitted to recover, just as though its charter contained no such provision? We put the question in this form for the reason we see no special circumstances in the case that take it out of the general rule that all contracts made in violation of an express statutory provision are inoperative and void, and no recovery can be had upon them."

After citing a number of authorities in support of the well-established rule "that no agreement to do an act forbidden by statute, or to omit to do an act enjoined by statute, is binding," the court cites and discusses the effect of Linn v. State Bank of Illinois, 1 Scam., 87; Nash v. Monheimer, 20 Ill., 215; Lewis v. Headley, 36 Ill., 433; Cincinnati, etc. Co. v. Rosenthal, 55 Ill., 85 (already stated herein); Starkweather v. Am. Bible Society, 72 Ill., 50; Fridley v. Bowen, 87 Ill., 151; Law v. The People, 87 Ill., 385, and Fuller v. City of Chicago, 89 Ill., 282; and then decides: "In the light of these cases and many others that might be cited, we cannot escape the conclusion that by reason of the prohibition in the bank's charter there was a total want of power, both on the part of the bank and of Bornman to so contract as to create an indebtedness from the latter to the former,

and hence the Circuit Court properly disallowed the claim of appellant against Bornman's estate."

In Durkee v. The People, 155 Ill., 354, it was held that a contract, by which the holders of railroad bonds are given the right to vote in stockholders' meetings, to which contract the corporation is a party, is void; the court saying: "Here, that which was provided for in the contract was explicitly prohibited by the statute and the Constitution of the State. An agreement to do an act forbidden by statute is not binding. (Penn v. Bornman, 102 Ill., 523; Cincinnati Mutual Health Ass'n v. Rosenthal, 55 id., 85; Rockhold v. Canton Masonic Benevolent Society, 129 id., 440, and 26 Ill. App., 152.) And it would be absurd to say that either persons or corporations can abrogate such a statute, upon the theory of an estoppel, by simply contracting to do the prohibited act."

In the Supreme, etc. v. Grigsby, 178 Ill., 57, it is held that a foreign corporation cannot collect money in Illinois unless it has complied with the laws of this State prescribing the terms upon which it may transact business in this State. The court say: "The right of the Indiana corporation to collect the money rests upon its right to transact business in this State, and as it had no such power, it could not collect the money."

The Illinois Trust Co. v. St. Louis, etc. Ry. Co., 208 Ill., 419, was an appeal from a judgment in a condemnation proceeding fixing the compensation to be paid by appellee, a foreign corporation, to appellant for land taken for the use of appellee. The case was reversed and remanded, the court saying: "Petitioner was asking the aid of the court to exercise a right which it claimed had been delegated to it by the legislature of this State, and the evidence showed that it had not complied with the condition upon which the power was delegated, but, on the contrary, had violated it. This court has uniformly held that a foreign corporation which has not complied with the conditions prescribed for transacting business in this State cannot maintain an action in the courts of the State. (Cincinnati Mutual Health As-

surance Co. v. Rosenthal, 55 Ill., 85; Supreme Order of Iron Hall v. Grigsby, 178 id., 57; Thompson Co. v. Whitehed, 185 id., 454.) The legislature have power to impose such conditions upon foreign corporations for the exercise of powers or privileges in this State as they may choose, and such conditions must be complied with."

The object of the Act of 1899 is to enable the State to control foreign corporations. Its provisions place no grievous burdens upon them. Its language is plain and requires no learned interpretation. It means exactly what it reads. It is for the legislative department to indicate and to control the public policy of the State; and when clearly indicated, as it is in this act, it becomes the duty of the courts to enforce and not to obstruct that policy. It is much more to the public benefit that the State control foreign corporations, than it is that a bill for merchandise shall be collected by the aid of our courts.

Appellee is not estopped to make this defense by the fact that it purchased the merchandise in question. To so hold would amount to a judicial repeal of the act. Durkee v. The People, 155 Ill., 354.

Nor does the imposition of a fine and the deprivation of the right to maintain a suit in the courts of this State, as set forth in section 67d, in the least lessen the force of the provisions of section 67b. Cincinnati, etc. Co. v. Rosenthal, 55 Ill., 85.

Believing that ever since the decision of Linn v. State Bank of Illinois, 1 Scam., 87 (1833), the rulings of our Supreme Court upon this question have been uniform, we have not gone out of that court in the citation of authorities.

The judgment of the Circuit Court is affirmed.

*Affirmed.*

MR. JUSTICE BROWN dissenting.

I cannot agree with the opinion of the majority of the court in this case. It proceeds upon the theory that the act concerning foreign corporations, approved May 26, 1897, as amended by act approved April 22, 1899, and now in force, renders void all contracts entered into by foreign

corporations falling under the inhibition of the first section of the act. In other words, until the foreign corporation shall have complied with the requirements of that act, no liability to it accrues from a person to whom it has sold goods in the State of Illinois. This is outlawry of the delinquent corporations, which I do not believe the legislature intended by its act, and which I do not believe is the proper construction of the act. The act, it seems to me, is penal and should be strictly construed. I think that the purpose of the enactment was what the Supreme Court of Missouri say was the purpose of a similar enactment in Missouri: "Not to exclude such concerns from participation in the business done in our State, but to compel compliance with certain conditions by them," and that those conditions are imposed "with a view of placing foreign and domestic companies on a footing of equality in the field of commerce."

The opinion of the majority of the court is based upon the position that the act of the corporation in selling the goods in question not being "authorized or permitted" by the first section of the act, the sale was therefore a prohibited thing, from which no cause of action could arise at any time. In this view there could have been no need for the legislature to place in the third section the provision or clause, "in addition to which penalty, on and after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort." The very fact that the legislature did make this express provision, seems to me to indicate its meaning, namely, that the remedy in such liability as might arise to the corporation from a transaction should be denied it until it had complied with the law. Upon its complying with the law, therefore, after the liability had accrued, it could pursue its remedy. As the Supreme Court of Missouri states it, "No corporation having failed to obey this law can maintain an action." The corrollary is that when it has complied, it may maintain the action.

That the Supreme Court of Illinois has considered that the act refers the ability or disability of the corporation to sue to its delinquency or non-delinquency at the time the suit is brought, and not to the time when the goods were sold or when the alleged liability accrued, is, I think, implied by its opinion in Thompson Co. v. Whitehed, 185 Ill., 454. It is true that the precise question was not in that case before the court, but it decided that the foreign corporation had lost its right to sue, because *when the suit was brought* it was delinquent under the law, although the contract was one which it was permitted to make, *when it was made*. In other words, the Supreme Court held the provision of the act in question to be one relating to the remedy, not to the right. I think, also, that there is an implication to the same effect in the case of Holmes v. Standard Oil Co., 183 Ill., 70.

This view was incidentally expressed by this court in the opinion in McCarthy v. Alphonse Custodis Chimney Construction Co., decided October 16, 1905, but the decision of the question was not necessary in the disposition of that case.