MEADER FURNITURE CO. v. COMMERCIAL NAT. SAFE DEPOSIT CO.

(Circuit Court, S. D. Ohio, W. D. July, 1911.)

1. CORPORATIONS (§ 644*)—FOREIGN CORPORATIONS—STATUTORY REGULATION— VALIDITY.

Act Ill. 1905 (Hurd's Rev. St. 1905, c. 32, §§ 67b–67j), prohibiting foreign corporations, with certain exceptions, from transacting business in the state without filing a copy of their articles under penalty of disqualification to sue in Illinois and a fine, is a valid exercise of the Legislature's power.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2512, 2539; Dec. Dig. § 644.*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke Collender Co., 72 C. C. A. 622.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** COURTS (§ 366*)—STATE COURT DECISIONS—EFFECT.

Decisions of the Supreme Court of a state construing a statute of that state do not bind a federal Circuit Court sitting in another state, if the decisions were announced after rights of the parties before the Circuit Court became fixed under contract.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954-968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

**3.** CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—STATUTORY REGULATIONS— EFFECT OF DISOBEDIENCE.

Failure to comply with Act Ill. 1905 (Hurd's Rev. St. 1905, c. 32, §§ 67b–67j), prohibiting foreign corporations, with certain exceptions, from transacting business in the state without filing a copy of their articles, under a penalty of disqualification to sue in Illinois and a fine, does not invalidate a contract made by a foreign corporation to furnish work and materials in building construction, so as to prevent suit in another jurisdiction.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 661.*]

At Law. Action by the Meader Furniture Company against the Commercial National Safe Deposit Company. On demurrer to defendant's plea. Demurrer sustained.

Maxwell & Ramsey, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly, for defendant.

HOLLISTER, District Judge. Plaintiff, a corporation of Ohio, December 28, 1905, entered into a contract with defendant, a corporation of Illinois, to furnish certain carpentry work, labor, and materials for defendant's new bank building in Chicago. It did the work, was paid in part, and sues for a balance of more than $97,000.

Plaintiff demurs to defendant's first defense, which avers that on the date the contract was made there was, and ever since had been, in full force, a statute of Illinois providing that before any foreign corporation for profit shall be permitted to transact business or exercise any of its corporate powers in Illinois, except certain kinds of corporations, it shall file with the Secretary of State its articles of incorporation, a statement of capital stock represented in Illinois, the designation of an attorney in fact on whom service can be had, and obtain from the Secretary of State a certificate entitling it to do business in Illinois (Hurd's Rev. Stat. 1905, 512, 514); that the plaintiff, a foreign corporation, has never taken any of the steps required of it, and that therefore the contract is null and void and no action can be maintained thereon.

The question raised is serious. If the demurrer is overruled, the plaintiff will lose nearly $100,000, although it has furnished the defendant what it had agreed to furnish so far as the facts appear upon this demurrer.

[1] The Legislature of Illinois had the power to pass the act in question and to impose the conditions it thereby imposed upon foreign corporations doing business in that state.

The bank claims that under public policy of the state of Illinois, as evidenced by its legislation of this character and by the decisions of its Supreme Court construing such legislation, this contract is null and void, and that this court, bound as it is, to follow the decisions of the highest court of a state construing statutes of that state, must declare the contract null and void, and incapable of enforcement in this court.

Lack of time forbids an elaborate discussion of the subject and of the numerous decisions which bear upon it. I have considered all of the cases cited by counsel, and shall content myself with stating my conclusions and the reasons therefor as briefly as may be.

February 14, 1855 (Scates, Comp. § 1, p. 596), the Legislature of Illinois enacted that it should not be lawful for any agent or agents of any insurance company incorporated by any other state, to directly or indirectly take risks or do or transact any business of insurance within that state, without first procuring a certificate of authority from the auditor of state, and other provisions imposing conditions upon such company doing business in the state. No penalty against the corporation was provided for failure to comply with these provisions, but "any person or persons violating the act" (evidently referring to agents) "might be fined not more than $1,000 or imprisoned in the county jail and fed on bread and water only."

In 1870 the Supreme Court of Illinois declared the Legislature intended to prevent unqualified foreign insurance corporations from doing any act without having first qualified, and as one of the means of prevention, that the courts shall hold its act void. And they held that the contract of insurance involved in the case was void. In discussing the right of the state to impose conditions, the court were of opinion:

"That the right of protecting their citizens from the fraud and imposition of insolvent or spurious corporations of this character, created by other states was clearly within the scope of legislative power possessed by the various states of the Union." Cincinnati Mutual Health Assurance Co. v. Rosenthal, 55 Ill. 85, 8 Am. Rep. 626.

On May 26, 1897 (Laws 1897, p. 174), the first Illinois law prescribing the conditions upon which foreign corporations in general, with certain exceptions, might do business in Illinois, was passed. The act provided that every such corporation, before it shall be authorized or permitted to transact business in Illinois, shall comply with the provisions of the act, and a penalty of $1,000 was affixed for failure to comply with the conditions imposed.

Section 4 of the act expressly provided that it did not apply to insurance companies and is not to be taken or construed to change or modify the laws which are directly applicable to that character of corporation; but, apart from the insurance laws, all acts and parts of acts inconsistent with the act of 1897 were repealed.

April 22, 1899 (Laws 1899, p. 118), the act of 1897 was amended, in all particulars unnecessary to be set forth; but, by section 4, it was provided that no foreign corporation failing to comply with the act could maintain "any suit or action either legal or equitable in any of

the courts of this state upon any demand, whether arising out of contract or tort."

While the law of 1905 was in force, but after the contract between the plaintiff and the defendant was made (December 28, 1905), the Supreme Court of Illinois, construing the act of 1899, held that the contract involved in the case before it was entered into in that state when the appellant was not permitted to transact business in the state, and was therefore "null and void, and no action can be maintained thereon at any time." United Lead Company v. Reedy Elevator Company, 222 Ill. 199, 78 N. E. 567. The Supreme Court quoted the language of Cincinnati Mutual Assurance Company v. Rosenthal, 55 Ill. 85, 8 Am. Rep. 626:

"When the Legislature prohibits an act or declares that it shall be unlawful to perform it, every rule of interpretation must say that the Legislature intended to interpose its power to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void."

On May 18, 1905 (Laws 1905, p. 124), seven months prior to the execution of the contract between the plaintiff and the defendant, the Legislature of Illinois passed an act repealing the acts of 1897 and 1899 and providing conditions to be complied with by foreign corporations before doing business in the state. These provisions provided merely additional conditions not affecting the question under discussion; but, the penalty to every foreign corporation amenable to the provisions of the act, which should neglect to comply with its provisions, was made $1,000 for the minimum and $10,000 for the maximum, to be recovered by the state's attorney for the proper county and the right to sue in the courts of Illinois was denied.

[2] The act of 1905 has not been construed by the Supreme Court of Illinois in any case. The bank claims that, the act of 1905 being the same in substance as the acts of 1897 and 1899, the construction of the earlier statute in the Reedy Elevator Case is a construction of the later, and, although the construction of the acts of 1897 and of 1899 in that case was subsequent to the date of the execution of this contract, yet the Supreme Court based its decision on the Rosenthal Case decided in 1870. The claim is that the legislative intention as declared by the Supreme Court in that case was to make void any act done by any foreign corporation not having theretofore complied with the laws of Illinois imposing conditions on the right to do business in the state.

There can be no doubt that the contract between the parties here could not be enforced in any court in Illinois, if its illegality were averred as a defense, nor can it be disputed that the Supreme Court of that state has, since the contract was entered into, declared the legislative intention toward foreign corporations failing to comply with the provisions of statutes in force at the time contracts were entered into, in 1855, and ever since, to be, that, unless the corporation has complied with the conditions prescribed, its contracts are null and void. If the public policy of a state as declared by decisions of its highest court without regard to the time when the decisions are made or the peculiar phraseology of the statutes construed or the

subject-matter and purposes of each is to control courts of the United States when such legislation comes before them for construction, then this court must hold the plaintiff could take nothing by his contract which, under such policy, so declared, is null and void. Only one case has been cited, and I have found no other, in which any court of the United States has gone further than to declare that the courts of the United States are bound by the construction given to a statute of a state by the highest court of that state prior to the time when the rights of the parties litigant were acquired.

The single exception referred to is Pittsburgh Const. Co. v. Railroad Co., 154 Fed. 929, 83 C. C. A. 501, 11 L. R. A. (N. S.) 1145, in which the Circuit Court of Appeals for the Third Circuit held that under the Pennsylvania Act of April 22, 1874 (P. L. 1874, 108), which provides that it shall be *unlawful* for a foreign corporation to do any business in that state until it had complied with the requirements of the act, and which made noncompliance criminal, a contract entered into in that state by an unqualified foreign corporation to construct a railroad in that state was illegal and void and no action could be maintained upon it. The decision was based on two grounds. One was that the unauthorized act was declared by the Legislature to be unlawful; the other was that, while the precise point in the case had not been squarely decided before the contract had been entered into, yet about one year thereafter the Supreme Court of Pennsylvania (Delaware, etc., R. Co. v. Passenger R. Co., 204 Pa. 25, 53 Atl. 533), in construing the act of 1874, had held such contract void and that the principle involved was the same as in prior cases. Therefore the court felt bound to follow the Pennsylvania decision. But the act of 1874 was involved in Lasher v. Stimson, 145 Pa. 30, 23 Atl. 552, decided long prior to the time the contract in question was under consideration, and the Circuit Court of Appeals might well say, from the facts, that the same principle was involved in prior Pennsylvania cases, and consider themselves bound accordingly.

When this contract was entered into, the Supreme Court of Illinois had held that an insurance contract of an unqualified foreign insurance company was void. That was the only decision on the subject. It was based on two considerations. One was the peculiar character of the business done by insurance companies to which in express terms the legislation only applied. The other was the legislation involved declared contracts of that kind, without precedent compliance with the provisions prescribed, to be *unlawful*. No penalty against the offending corporation being provided, the court might perhaps say, as they did in the Rosenthal Case, that that which the law had declared to be unlawful was void and no rights could be predicated upon it.

When the contract of December 28, 1905, was made, the law of May 18, 1905, repealing the laws of 1897 and 1899 was in effect. That law expressly excepted insurance companies from its operation and nowhere declared any act of a foreign corporation to be unlawful without antecedent compliance with the conditions prescribed, and the law of May 18, 1905, as well as the laws repealed by it, pro-

vided a penalty for noncompliance with the law, both in a penal sum of money and deprivation of right to sue in Illinois courts. That was the status of the Illinois law and decisions at the time the contract was made.

At that time the law affecting foreign corporations, of such kind as is the plaintiff, was entirely different from the laws affecting foreign insurance companies, concerning which only had there been a decision of the Supreme Court of Illinois. So, there is no straining of logic in holding that at the time this contract was made the Supreme Court of Illinois had not construed the statute of 1897, 1899, or of 1905. That they afterwards construed the acts of 1897 and 1899, and inferentially of 1905, means nothing more than that then, and in the case they decided, they were of opinion that the legislative policy and views of the Supreme Court had been the same since the foreign insurance statute of 1855 and the decision in the Rosenthal Case in 1870, and that when an act required a thing to be done and it was not done, it was the same as if the act had said it was *unlawful* to do the thing and that the imposition of the penalty was not intended to do more than to bring about with greater certainty a compliance by foreign corporations doing business in the state with legislative conditions precedently to be performed, a conclusion which, with deference, I think, for reasons hereinafter given on another branch of the case, entirely wrong.

In the decision in the Rosenthal Case it is expressly said that the legislation of 1855 was "intended and well calculated to protect the people of the state from loss by foreign insurance companies, who are insolvent or worthless," by requiring them to comply with certain conditions. The court do say:

"When the Legislature prohibits an act, or declares that it shall be *unlawful* to perform it, every rule of interpretation must say that the Legislature intended to interpose its powers to prevent the act, and, as one of the means of its prevention, that the courts shall hold it void." (All italics mine.)

The court might perhaps with propriety speak this way of the legislation before them for construction, declaring as it did the prohibitant acts to be *unlawful;* but the laws construed after this contract was made are entirely different in phraseology from the insurance act. They contain drastic penalties against the corporation. They do not declare that the act shall be *unlawful,* and are not directed against the business of foreign corporations generally considered as dangerous, unless controlled, to the citizens of Illinois. Such statutes as those of 1897, 1899, and 1905, were not before the court, and whatever is said in the Rosenthal Case broad enough, or inferentially broad enough to be applicable to those statutes, is obiter merely. When the contract of December 28, 1905, was entered into between these parties, the Legislature and Supreme Court of Illinois had not declared any policy touching such corporations as is the plaintiff and such contracts as the plaintiff seeks to enforce here.

I hold, therefore, that at the time the plaintiff and the defendant entered into their contract of December 28, 1905, the Supreme Court of Illinois had made no construction of the law of May 18, 1905, at

all, and that the principle involved in the statute of 1855 does not apply to the statutes of 1897, 1899, and 1905.

If this conclusion is right, this court may determine for itself the meaning of the law of 1905 most consistent with reason, with justice between the parties, and with the weight of authority without reference to the views of the Supreme Court of Illinois, in construing as they have the various enactments to which reference has been made, although holding their views at all times in high respect.

[3] Of course, if the act of 1905 had declared void the exercise of corporate powers by unqualified foreign corporations or any act by such corporations not complying with its provisions, to be void, then this contract would be void. If the act had provided that it should be *unlawful* for a foreign corporation to exercise its corporate powers without compliance with the prescribed conditions or without the imposition of a penalty for failure to do so, perhaps any exercise of corporate power would be void, and, if a penalty also were imposed for doing an act declared to be unlawful, perhaps then (but in all cases depending upon the entire language and purpose of the statute) such act would be void. But the statute of 1905 contains no such provisions. It does provide that if a foreign corporation shall not comply, and, without compliance, exercise its corporate powers, it shall have no right which can be enforced in the courts of Illinois, and it shall be subject to a penalty of from $1,000 to $10,000, and that is all it does provide by way of penalty.

The inquiry suggests itself why the Legislature did not provide that failure of compliance would result in a voidance of rights anywhere, instead of imposing the penalty of disability to enforce its contracts in the courts of Illinois, or why was not the exercise of corporate powers, or the failure to comply with the conditions, declared to be void or to be unlawful, hence void, and of no operation anywhere? The law of 1855 did declare unqualified acts to be unlawful. Why was that declaration dropped out of the laws of 1897, 1899, and 1905, and insurance companies expressly excepted from their operation, unless the Legislature intended that the contracts of unqualified foreign insurance companies should be void and that acts done by other unqualified foreign corporations should be visited with the penalty of a fine and deprivation of right to the protection of the courts of Illinois.

The question is one of legislative intention, and it seems clear to me that, while the Legislature may have intended the acts of one kind of foreign unqualified corporations to be void, they intended the acts of the other to be subject to the penalties prescribed. From the nature and history of the insurance business and the frauds and imposition perpetrated by irresponsible insurance companies, the Legislature might well make a distinction between those companies and other companies doing business of various kinds for profit. It seems clear to me that the Legislature of Illinois have made a clear distinction.

When the provisions of the enactments of 1897, 1899, and 1905 are read in the light of such decisions of the Supreme Court of the

United States as Harris v. Runnels, 12 How. 79, 13 L. Ed. 901, Fritts v. Palmer, 132 U. S. 282, 10 Sup. Ct. 93, 33 L. Ed. 317, and others, the conviction is irresistible that, if those acts were before that court for construction in a case involving such a contract as is now before this court and not complicated in any way by decisions of the Supreme Court of Illinois, the contract would not be held void but enforceable as between the parties, if not in the courts of Illinois, yet in all of the courts of the United States.

While the rule is general that an illegal contract is void and unenforceable, yet there are exceptions to it. In Harris v. Runnels, Mr. Justice Wayne, speaking for the court, says:

"We have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only, for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether the makers of it meant that a contract in contravention of it should be void, or that it was not to be so; in other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the Legislature meant that contracts in contravention of it were to be void in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application to every case is denied. It is true that the statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a contract without a prohibition; but it does not follow that the unlawfulness of the act was meant by the Legislature to void a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary could be properly inferred, a contract in contravention of it is void."

Judge Sanborn, in Dunlop v. Mercer, 156 Fed. 545, 555, 86 C. C. A. 435, 445, after stating the general rule, says:

"It is not universal in its application. It is qualified by the exception that where a contract is not evil in itself, and its invalidity is not denounced as a penalty by the express terms of or by rational implication from the language of the statute which it violates, and that statute describes other specific penalties, it is not the province of the courts to do so, and they will not thus affix an additional penalty not directed by the lawmaking power."

And he supports his conclusions by a wealth of decisions of the Supreme Court and of the subordinate courts of the United States.

The plaintiff was not engaged in business of such a character as to afford opportunities for fraud and imposition, but was authorized by its Ohio charter to conduct a manufacturing business of a highly meritorious character. The contract itself was innocent. There was not the same reason for the Legislature to protect its citizens, parties to such contracts, as there was in shielding them from the machinations of irresponsible insurance companies and dishonest insurance agents. It is to the advantage of the citizens of Illinois that such contracts as the parties to this suit entered into be made and carried out. In the light of these facts and considering the language of the acts of 1897, 1899, and 1905, and comparing it with the language of the act of 1855, and the kind of foreign corporations dealt with in that act, it is very plain that the penalties for noncompliance with the general foreign corporation statutes were intended to be a fine and the nonenforcement of contract rights in the courts of Illinois, and that

.the Legislature intended nothing more than this. There is much else in the opinion in Dunlop v. Mercer, supra, on this branch of the case, particularly pertinent.

The nature of the defense does not commend itself to a court, and, ·while it must be admitted that no estoppel prevents the bank from making the defense that the contract is void, yet it was not required to do so, for even if the suit had been in the courts of Illinois and the defense were not made, it could have proceeded to judgment although the right to sue in Illinois did not exist. Even in Illinois, then, such a malodorous defense must be actually made or the cause will proceed.

Justice and fair dealing between the parties require the finding by the court to be of such a character as to permit the controversy between the parties to be fought out on its merits if it is possible within the authorities to make a finding. Although the questions are open to serious debate and eminent authority supports defendants' position, yet I find it possible, under the decisions of the courts of the United States, to hold that the particular statute in question was not construed by the Supreme Court of Illinois in such a way as to prevent the exercise by this court of its independent judgment, and, in the exercise of that judgment, to find that a proper construction of those statutes does not render the enforcement of this contract in this court impossible.

The demurrer will therefore be sustained.